## ROBERT E. WILSON v. DULUTH FILTER COMPANY.

250 N. W. 2d 832.

January 14, 1977—No. 46261.

*Falsani & Balmer* and *Robert C. Falsani,* for appellant.

Considered and decided by the court without oral argument.

PER CURIAM.

Robert E. Wilson began work for Duluth Filter Company, a wholly owned subsidiary of J. C. Campbell Co., as a salesman and then became managing officer of the company. At the time he assumed his new duties, the company was operating at a loss. The board of directors of the parent and subsidiary were identical except for one member. Wilson proposed an agreement as to financial rewards and stock ownership if he were successful in operating the company. These proposals were accepted by the directors. The company became profitable under Wilson's management, was sold, and the new owner indicated he would assume the company's obligations to Wilson. Subsequently, Wilson terminated his employment and brought action for additional compensation based on contract or quantum meruit. The trial court directed a verdict for the defendant on the grounds the contract was too vague to be enforceable. We reverse and remand for a new trial.

Wilson commenced employment with Duluth Filter as a salesman. The company manufactured and sold oil filters used in large motors. At that time the managing officer was being paid a salary of $1,000 per month plus expenses and use of a company car. The company was operating at a substantial loss and the parent company, J. C. Campbell Co., had to guarantee payment to its suppliers of raw materials.

In March of 1970 Wilson met with the directors. At that time Wilson assumed they were acting in their capacity as directors of Duluth Filter since this was the business being discussed. There is a dispute in the evidence as to whether the directors were acting in their capacity as directors of Duluth Filter Co.

or J. C. Campbell Co., but the individual who was only a director of Duluth Filter was present at this meeting. Wilson agreed to serve as managing officer for a monthly salary of $800, use, his own car, and be reimbursed for nominal business expenses. If Wilson was successful in "turning the company around" and show that it could operate at a profit, he expected to be reimbursed for the difference in his salary and that of his predecessor retroactive to March, 1970, to be compensated for the use of his own car rather than a company car, and to receive a stock interest in the company. Wilson sought to establish this argument by offering in evidence signed statements of two directors who attended this meeting, but were not within this jurisdiction at the time of trial. The documents stated:

"(1)   Robert Wilson would continue on at his present salary of $800.00 per month replacing Mr. Rod Sievers as President.

"(2)   Mr. Wilson would turn in all Avis Rental Cars and use his own for company business.

"(3)   Normal business expenses incurred during business would be borne by the company.

"(4)   Wilson would reverse the company's past operating experience or the company would owe him nothing.

"(5)   Assuming that he was successful, he would recoup the difference between his salary and that paid to Mr. Sievers, with interest.

"(6)   That he be given a stock interest in company if successful. The amount of stock not being determined at this meeting."

The trial court refused to admit these statements.

Wilson commenced management of the company and it made a profit in 1971 and 1972. An independent accountant who had examined the books of the company testified that it had "turned around in 1972". Wilson sought to testify that the directors of the company acknowledged that the company had "turned around" in 1972, but this testimony was not permitted by the trial court.

In May of 1972, Vincent Law acquired the controlling interest in Duluth Filter Co. He acknowledged that he was aware of Wilson's potential claims at this time and that he had agreed with Wilson that he would honor any obligation the company had to him. Wilson testified that Law had promised him a 25-percent stock interest in the company. Wilson continued in the employ of the company until the fall of 1973 when he was terminated in a dispute over ownership of a patent.

Wilson brought action for damages based on contract and quantum meruit. In its answer the company admitted that the board of directors "may have indicated that salary increase would occur as the business of the company warranted it and that opportunities for Mr. Wilson to acquire stock were and would be available to him." The matter was tried before a jury but at the close of testimony, the trial court granted the company's motion for a directed verdict. The trial court denied Wilson's motion for a new trial and accompanied its order with a memorandum which states:

"The Court has carefully reviewed each contention of the plaintiff raised in the motion for a new trial. All of these issues were fully considered and argued during the actual trial proceedings. Plaintiff's proof in this case failed to establish a contract with the Duluth Filter Co. Plaintiff's assertions as to an oral understanding reached with certain persons that had a prior interest in the Duluth Filter Co. were vague, indefinite and ambiguous with respect to its entire terms, including the parties alleged to be involved in the transaction, and this Court was and is of the opinion that a jury could only engage in the grossest kind of speculation as to the existence of and the terms and conditions of any contract."

The issues on appeal are:

(1)  Was it error to exclude the statements of the directors of the company concerning the purported agreement with Wilson?

(2) Was it error to exclude Wilson's testimony as to acknowledgement by the director that the company had turned around?

(3) Did the trial court err in directing a verdict for the defendant?

1. The statements of the directors were offered as admissions against interest. These two directors were shareholders of Duluth Filter Co. in March of 1970. Any agreement to provide additional compensation to Wilson and particularly to furnish him stock in the company would dilute their interest in the company. We find no merit in the contention that the directors were not acting in their capacity as directors of Duluth Filter Co. at the March 10, 1970, meeting. Viewed thusly, the statements were declarations directly against pecuniary interest and should have been admitted since the declarants were absent from the jurisdiction. 5 Wigmore, Evidence (3 ed.) § 1456. Johnson v. Sleizer, 268 Minn. 421, 129 N. W. 2d 761 (1964).

2. Wilson's proffered testimony as to the "turning around" of the company should have been received. The refusal was not prejudicial in the light of other evidence, but on retrial this evidence should be allowed.

3. We hold that the trial court erred in directing a verdict for the company on the grounds the alleged contract was vague, indefinite, and uncertain. In Hartung v. Billmeier, 243 Minn. 148, 150, 66 N. W. 2d 784, 787 (1954), this court in considering a claim that the contract was unenforceable as too vague and uncertain said in part:

"* * * Although vagueness and indefiniteness may prevent the creation of a contract, it is not to be forgotten that any offer or agreement is indefinite and uncertain in some degree since words are but imperfect symbols of what each party understands and intends. A proper administration of justice does not permit an overzealous quest for subtle ambiguity to destroy the intent of the parties when the court, despite some incompleteness and imperfection of expression, can reasonably find that intent by

applying the words used, with all their reasonable implications, to the subject matter as the parties themselves, under all the surrounding circumstances, must have applied, used, and understood them. This court is reluctant to invoke the principle that indefiniteness prevents the creation of a contract where a just result, consistent with a reasonably expressed intent of the parties, can be reached by upholding the agreement."

Considered in this light together with the additional evidence which should have been permitted, the matter presents a jury issue and is not susceptible to a directed verdict. On retrial, it will be for the jury to determine as an element of damage if in fact Law did agree to give Wilson 25 percent of the company stock so as to make certain what was left undetermined by the original agreement.

Reversed and remanded for new trial.