**Richard A. Burke v. Department of Employment Security**

[450 A.2d 1156]

No. 390-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed September 7, 1982

*Dan Jerman* and *Samuel C. Farrington,* Vermont Legal Aid, Inc., Rutland, for Plaintiff-Appellant.

**Underwood, J.** The claimant appeals a decision of the Employment Security Board denying him unemployment compensation benefits on the ground that he voluntarily left his job without good cause attributable to his employer, and thus was disqualified by 21 V.S.A. § 1344(a)(2)(A).

He left work on January 7, 1981, the date he discovered that his employer had breached its promise to provide medical insurance for its employees by allowing their Blue Cross/

Blue Shield coverage to lapse during the last three months of 1980. When he confronted his employer about the matter on January 7, 1981, he was told that coverage had been reinstated effective January 1, 1981, and would remain in force continuously thereafter. Unwilling to trust his employer, he quit. Had he investigated, he would have found his mistrust justified by the fact that no coverage was then in force.

His application for unemployment benefits was denied by the claims examiner, a decision which was affirmed by the appeals referee and the Employment Security Board. The claimant appeals from the Board's decision to this Court, claiming the employer's breach constituted good cause for quitting.

■ "[W]hether a resignation is for good cause attributable to the employer is a matter within the special expertise of the . . . Board, and its decision is entitled to great weight on appeal." *Allen* v. *Department of Employment Security*, 141 Vt. 132, 134, 444 A.2d 892, 893 (1982). In this case, however, "The established facts do not support the result reached by the Employment Security Board; rather, they 'compel a different result as a matter of law.'" *Gale* v. *Department of Employment Security*, 136 Vt. 75, 77, 385 A.2d 1073, 1075 (1978) (quoting *In re Gray*, 127 Vt. 303, 305, 248 A.2d 693, 695 (1968)).

The Board, conceding that "the evidence in the record does reflect that the employer breached a term of the claimant's contract of hire by allowing the claimant's Blue Cross/Blue Shield coverage to lapse," nevertheless concluded that the claimant did not have good cause attributable to the employer to quit. It reached this result by concluding first that the fact of the breach itself did not constitute good cause because of (a) the "fortuitous" circumstance that the claimant had not needed his medical insurance during the period it should have been in force; and (b) the employer's representation to him on January 7, 1981, that the coverage had been restored. Since he wasn't hurt by the lapse and had been told that coverage was again in force, the past lapse alone was not enough to constitute the requisite good cause, the Board held. Accordingly, it then analyzed whether the claimant was

justified in leaving because he did not believe the employer to be trustworthy.

> [T]he record clearly reflects that upon learning of the lapse in coverage, the claimant approached his employer to discuss the matter. At that time, the [employer] informed the claimant that coverage was reinstated effective Jan. 1, 1981, and that coverage would remain in continuous effect thereafter. Because, however, the claimant placed little stock in the credibility of his [employer], he decided to leave his employment at that point. In our view, the claimant's leaving was without good cause attributable to his employer because it was grounded upon his anticipation that the employer's representation concerning reinstatement and continuity of coverage was not worthy of belief. In our opinion, the reasonable course of action would have been for the claimant to remain in his employment and to wait and see whether the employer's representation was correct. If it later became clear that such representation was erroneous, then and only then would the claimant perhaps have had good cause to voluntarily leave. In short, we conclude that the claimant left in anticipation of a future breach of his employer's representation and as such did not have good cause for leaving at the time he did.

■ The claimant agreed to perform certain duties in exchange for a certain consideration. A portion of the consideration was in the form of salary; the remainder took the form of medical insurance. That coverage had monetary value. The employer shortchanged the claimant when it failed to pay the consideration agreed upon for the claimant's services. The claimant left because his employer failed to keep its side of the bargain. Our cases disclose numerous instances in which the employer's failure to provide the consideration agreed upon when due has been held to constitute good cause to leave attributable to the employer. See *Allen v. Department of Employment Security, supra* (failure to provide promised training); *Seymour v. Department of Employment Security,* 137 Vt. 79, 399 A 2d 519 (1979) (breach of agree-

ment to provide transportation); *Zablow* v. *Department of Employment Security*, 137 Vt. 8, 398 A.2d 305 (1979) (repeated failure to pay wages when due); *Shorey* v. *Department of Employment Security*, 135 Vt. 414, 377 A.2d 1389 (1977) (failure to provide promised raise).

The Board's refusal to find good cause places the employee in an intolerable situation, is logically incoherent, and thwarts the clear intent of our unemployment compensation law. It is beyond dispute that this employer's breach of its promise to provide medical coverage and its deliberate concealment of that breach for over three months calls its reliability into question. Under the course of action deemed "reasonable" by the Board, the claimant is justified in quitting only, if ever, during the pendency of a breach, because he can't quit based on a past lapse or on the ground that the past lapse bodes ill for the future. Thus, while he might have been justified in quitting during the three-month lapse, his employer's success in concealing the lapse, and its mere representation that coverage was now in force, require him to await proof of another lapse, and risk the consequences of noncoverage.

On January 7, claimant was not covered retroactive to January 1 despite the employer's representations to the contrary. Coverage was not reinstated until January 13, 1981. Only then was it made retroactive to January 1, 1981. The Board's handling of this fact produces a result completely at odds with its recommended course of action as previously set out in this opinion.

The Board's decision puts beyond dispute the facts that on January 7 the employer told the claimant that coverage was then in force, effective from January 1; and that coverage was not in fact reinstated until January 13, when it was made effective from January 1. It is clear, then, that on January 7 the employer's representation was "false and erroneous": no coverage was then in force. The fact that coverage was later reinstated effective from January 1 does not make true the untruth of January 7.

The Board's conclusion that claimant was not covered on January 7 "*only* . . . because he voluntarily left his employment prior to the date that the coverage was finalized" is contradicted by its own findings, which establish that another

reason for the lapse in coverage was the employer's breach of the contract.

After having earlier required the claimant to await proof of a present breach to quit, it now implies that no breach by the employer today can ever constitute good cause to quit, because the employer might make it up tomorrow. This result, obviously, is completely at odds with the Board's recommended course of action, which was to quit during the pendency of a breach.

■■ The statutes governing unemployment compensation put no such burden on employees. Rather, 21 V.S.A. § 1344(a)(2)(A), by prohibiting payment of benefits to employees who voluntarily quit jobs without good cause attributable to their employers, clearly recognizes that there exist occasions when the employer's conduct does provide good cause to quit. Here the claimant reached an agreement with his employer which assured the availability of health care. The employer's breach of its contractual obligation to provide medical coverage provided good cause, attributable to the employer, for the claimant to quit.

*The judgment of the Employment Security Board imposing a disqualification upon the claimant on the ground that he voluntarily quit without good cause attributable to the employer is reversed. The cause is remanded for computation of benefits.*