**Bradford L. Cook v. Department of Employment and Training**

[468 A.2d 569]

No. 82-027

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ

Opinion Filed November 1, 1983

*Robert B. Russell, Jr.*, Montpelier, for Plaintiff-Appellant.

*Matthew R. Gould* and *Steven J. Kantor*, Montpelier, for Defendant-Appellee.

**Billings, C.J.** This is an appeal from a decision of the Vermont Employment Security Board (Board) disqualifying claimant from unemployment benefits on the ground that he left his employing unit voluntarily without good cause attributable to that employing unit. 21 V.S.A. § 1344(a)(2)(A). The Board's decision sustained earlier decisions of the claims examiner and the appeals referee.

On March 23, 1981, claimant signed a one-year employment contract with the New England Culinary Institute (NECI) to manage a restaurant/bar. The first paragraph of the contract began with the statement that the claimant was to be "responsible for the entire operation" of the restaurant/bar, including such things as table service, food preparation, and food and beverage control. The last sentence of the same paragraph stated that claimant would "of course . . . be accountable to the Director of Food Operations . . . ." (Director). Claimant's salary was $175.00 per week plus a maximum monthly bonus of $260.00, computed on the basis of a score obtained in monthly evaluations conducted by the Director. In addition, claimant would be eligible for maximum semi-annual bonuses of $1,040.00. These bonuses were to be computed by taking the operating costs under claimant's control (food, beverage, labor, supplies, utilities and replacements) and computing whether

those costs fell within certain stated percentages of sales. If the costs did not exceed a certain percentage of the stated sales figure, claimant would be entitled to one hundred percent of the maximum $1,040.00 bonus.

On July 27, 1981, claimant resigned. In his letter of resignation, claimant cited, as reasons for resigning, conflicts with the Director over management control and procedures, declining health, low pay and the fact that his June bonus was not based upon an evaluation provided by the Director. Claimant filed for benefits on August 4, 1981.

On appeal, claimant argues, first, that the terms of his employment contract created a reasonable expectation that the amount of his semi-annual bonus would be directly and solely tied to the degree of skill and expertise he exhibited as manager of the restaurant/bar. Contrary to this expectation, however, claimant found that his managerial control over those areas of operation, upon which his semi-annual bonuses would be based, was subject to overseeing by the Director, thus severing the perceived proportionality between the exercise of his management skills and the potential maximum $1,040.00 bonus. As some examples of his actual lack of control, claimant points to the fact that he was required to purchase all food and dessert items from an NECI affiliated "commissary," that he was not allowed to change the size of bar glasses after receiving customer complaints about weak drinks, and that he had no control over the decision to establish a raw bar or over the cost of the fish items served at the raw bar. Second, claimant argues that, contrary to the terms of his employment contract, his June bonus was both untimely and not computed according to an evaluation provided by the Director. Claimant did not raise the issues of health and inadequate pay below, and we will therefore not consider them on appeal. *English* v. *Myers,* 142 Vt. 144, 148, 454 A.2d 251, 253 (1982).

The Board found that claimant's managerial control over those operating costs to which his semi-annual bonuses were linked was expressly qualified by the sentence in the contract stating that claimant was to be "accountable" to the Director. Additionally, the Board found that because claimant resigned after a little less than four months on the job, his apprehension over the size of his semi-annual bonus, due in September, was speculative and thus could not have provided him with the

requisite good cause to resign in July. With respect to claimant's monthly June bonus, the Board concluded that the Director's failure to provide the June bonus evaluation was corrected by his promise to complete two bonus evaluations in July.

The question of whether a resignation is for good cause attributable to the employer is a matter within the special expertise of the Board, and its decision is entitled to great weight on appeal. *Allen* v. *Department of Employment Security*, 141 Vt. 132, 134, 444 A.2d 892, 893 (1982). The findings of the Board will be affirmed by this Court if they are supported by credible evidence, even if there is substantial evidence to the contrary. *In re Wheelock*, 130 Vt. 136, 141, 287 A.2d 569, 572 (1972).

The wording of the NECI employment contract, with respect to the issue of managerial control and accountability, may well be open to dispute. However, we are not the triers of fact. Weight, credibility and persuasive effect are for the trier of fact, in this case, the Board. *Kasnowski* v. *Department of Employment Security*, 137 Vt. 380, 381, 406 A.2d 388, 389 (1979). The Board heard both the claimant's and the employer's account concerning the issue of control over operating costs, and made findings favorable to the employer. See *Hill* v. *Department of Employment Security*, 141 Vt. 455, 456, 449 A.2d 969, 969 (1982) (per curiam). There is sufficient evidence in the record to support the Board's findings and we may not, therefore, disturb them. *Id.* Even though claimant may have felt that his first semi-annual bonus was threatened by the Director's alleged usurption of his managerial control, he had no knowledge in fact as to the status of that bonus, since he resigned well before its due date. A resignation over "something that is only a future possibility and has not actually yet occurred does not justify the award of benefits." *Hamilton* v. *Department of Employment Security*, 139 Vt. 326, 328, 428 A.2d 1108, 1109 (1981) ; *Kasnowski* v. *Department of Employment Security, supra,* 137 Vt. at 382, 406 A.2d at 390.

The Director's failure to provide a June bonus evaluation appears to be a clearer violation of the employment contract than was the issue of managerial control; on review, however, it is a more troublesome issue. Although the Board found that

the employer's failure to provide the June bonus was corrected by the Director's promise to provide two bonus evaluations in July, this ignores evidence of the employer's fault. *Seymour* v. *Department of Employment Security,* 137 Vt. 79, 80, 399 A.2d 519, 520 (1979). The employment contract clearly provided that claimant was to receive, in addition to his $175.00 weekly salary, a monthly bonus of up to $260.00 based "on the score obtained in an evaluation of your work by your immediate supervisor." Just as clearly, claimant did not receive, in June, a June bonus based on the Director's evaluation. The Director testified that his failure to provide a June bonus evaluation was inadvertent, the result of the Director's involvement in NECI's opening of a new restaurant and of time taken for a vacation. There was also testimony that he discussed the June bonus with the claimant and assured claimant that two bonus evaluations would be provided in July. Claimant did in fact receive one bonus evaluation in July; written on that evaluation was the notation "First of two for July." Claimant resigned before the due date of the second bonus evaluation.

In *Burke* v. *Department of Employment Security,* 141 Vt. 582, 450 A.2d 1156 (1982), we said that an employer's failure to provide the agreed-upon consideration, when due, constituted good cause to quit. *Id.* at 587, 450 A.2d at 1157–58; see also *Zablow* v. *Department of Employment Security,* 137 Vt. 8, 9, 398 A.2d 305, 306 (1979) (per curiam) (employers have a duty to pay wages when due). In *Burke,* the claimant resigned the day he discovered that his employer had, contrary to his employment contract, allowed the employee's medical coverage to lapse over the previous three months. *Burke, supra,* 141 Vt. at 583–84, 450 A.2d at 1156–57. Although the employer assured the claimant that coverage had been retroactively re-established, the claimant resigned anyway because of his disbelief in the employer's assurance. *Id.* at 584, 450 A.2d at 1157. It was later confirmed that the employer did not re-establish coverage until sometime after claimant's departure. *Id.* at 586, 450 A.2d at 1157.

Here, while the employer did fail to provide part of the agreed-upon compensation when due, there was no attempt to conceal this from the claimant. This failure stemmed from

an innocent mistake rather than from a deliberate or bad faith act on the part of the employer. See also *Shorey* v. *Department of Employment Security,* 135 Vt. 414, 415, 377 A.2d 1389, 1390 (1977) (per curiam) (employer induced claimant's continued employment through false promises of a future pay raise). Nor did NECI attempt to mislead claimant about its failure to provide the June bonus. The Director acknowledged his mistake and assured claimant that he would receive two bonuses in July. Claimant did in fact receive a bonus in July, and the evidence in the record suggests that, had he remained through the month of July, he would have received the second bonus.

In addition, there is nothing in the record indicating that claimant's July 27th resignation was motivated by his failure to receive the June bonus when due. See *Burke, supra,* 141 Vt. at 585, 450 A.2d at 1157–58 (claimant resigned on day of discovering employer's breach of contract) ; *Allen, supra,* 141 Vt. at 133, 444 A.2d at 893 (employee resigned because employer continually failed to provide promised training over a period of one and a half years) ; *Seymour, supra,* 137 Vt. at 80, 399 A.2d at 520 (where employer breached contract provision to provide employee transportation, employee's good faith effort to continue working for a four-week period does not waive good cause for employee to resign) ; *Zablow, supra,* 137 Vt. at 9, 398 A.2d at 306 (employee resigned because employer repeatedly failed to pay weekly salary when due) ; *Shorey, supra,* 135 Vt. at 415, 377 A.2d at 1390 (employee resigned because employer failed to provide promised pay raise). Claimant's letter of resignation did not complain of the untimeliness of his June bonus evaluation, but rather that the bonus was not based on the Director's evaluation.* Claimant

---

* The record shows that upon returning from his vacation, the Director apparently indicated to the claimant that because he failed to provide the June bonus evaluation, claimant was entitled to the maximum bonus amount of $260.00. However, sometime in June the President of NECI had made an inspection visit to the restaurant/bar during the dinner hour and found claimant playing a video game. The President sent claimant a letter of reprimand. Because of this, the bonus received in July, presumably as make-up for June, was not the maximum $260.00. Although the bonus amount may not have been based solely upon an evaluation of claimant's performance by the Director, the

resigned almost a month after the due date of the June bonus and after receiving assurances of a July make-up bonus, and a little more than two weeks after receiving a July bonus evaluation which clearly indicated that it was the first of two. These circumstances clearly suggest that claimant had accepted the untimeliness of the June bonus. See 81 C.J.S. *Social Security* § 234 (employee may waive rights to benefits by his acts).

▇ We do not suggest that claimant could have resigned only during the pendency of the breach in order to be eligible for benefits. See *Burke, supra,* 141 Vt. at 586–87, 450 A.2d at 1158. But when an employee, either expressly or impliedly, consents to the occurrence of an event that could provide the basis for good cause to resign, then it would be clearly contrary to the purposes of the unemployment compensation laws to allow at a later date the payment of benefits on the basis of that earlier event. See *Lane* v. *Department of Employment Security,* 134 Vt. 9, 10, 347 A.2d 454, 455 (1975) (21 V.S.A. § 1344 "expresses the general principle that unemployment compensation is not a benefit available . . . at . . . election, but rather one to which [claimant] gains entitlement by circumstances less within his control.").

*Affirmed.*

NECI employee handbook, which claimant received along with his employment contract, clearly states that "there may be developments from time to time which require some alteration in Institute policies."