**Joan T. BAKER, Relator,**

v.

**FANNY FARMER CANDY SHOPS #
154, Department of Jobs and
Training, Respondents.**

**No. CO–86–898.**

Court of Appeals of Minnesota.

Oct. 21, 1986.

Randall B. Holbrook, Coon Rapids, for relator.

Bruce C. Recher, Minneapolis, for Fanny Farmer.

Hubert H. Humphrey, III Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Jobs and Training.

Considered and decided by PARKER, P.J., and FORSBERG, and LESLIE, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Joan Baker appeals from a determination by the Commissioner's representatives that she "waived" good cause to quit. We reverse.

## FACTS

Joan Baker began working for the Fanny Farmer Candy Shops as a salesperson/bookkeeper in November 1978. She was hired with the understanding that she would be required to work only days; however, in early 1984 her employer began requiring her to work two or three night shifts per week.

Baker testified that she complained to the shop supervisor in November 1984[1] about her hours and also spoke to her store manager who, in turn, spoke to the district manager. The district manager, however, testified that neither Baker nor the store manager had ever spoken to her about Baker's dissatisfaction with her work schedule. The district manager also testified that Baker's schedule was flexible and that employees were typically told when they were hired that their schedules would be flexible. The Commissioner's representative resolved this conflicting testimony in Baker's favor, finding that she had occasionally complained to her superiors about her hours, but had nonetheless continued to work the night shifts.

Baker resigned on July 12, 1985. Although she did not include a reason for leaving in her letter of resignation, she told her store manager that she had decided to look for work closer to home. She also submitted this reason to the Department of Jobs and Training when she applied for unemployment compensation benefits.

Baker's claim for benefits was denied on the basis that she had voluntarily resigned for personal reasons, and she appealed. At a hearing before a Department referee, she testified that, in addition to her desire to obtain work closer to home, she had resigned because of the change in her work schedule.

The referee determined that Baker's separation from employment was for good cause attributable to the employer because the employer had violated a condition of

---

1. Although Baker's hours were first changed in early 1984, the store was closed from April to November 1984 due to tornado damage.

the employment agreement, thereby rendering Baker's position "significantly and substantially less favorable." The employer appealed to a Commissioner's representative, who reversed the Department referee, concluding that, by continuing to work the night shifts, Baker had waived any breach of the employment agreement.[2] Baker appeals.

### ISSUES

1. Did Baker have "good cause attributable to her employer" when she quit her job after breach of the employment agreement?

2. Did Baker waive good cause to quit by continuing to work after complaining of the breach?

### DISCUSSION

### I

An employee who voluntarily resigns from her job is not entitled to receive unemployment compensation benefits unless the resignation was for good cause attributable to the employer. Minn.Stat. § 268.-09, subd. 1(1) (1984). The employee has the burden of proving that the resignation was for good cause so attributable. *Marz v. Dept. of Employment Services*, 256 N.W.2d 287 (Minn.1977).

▇▇▇ "Good cause attributable to the employer" embraces situations in which an employee, through no fault of his own, leaves employment due to factors or circumstances directly connected therewith. *Hessler v. American Television and Radio Co.*, 258 Minn. 541, 557, 104 N.W.2d 876, 887 (1960). A breach of the employment contract constitutes good cause to quit. *Helmin v. Griswold Ribbons and Typewriter*, 345 N.W.2d 257 (Minn.Ct.App.1984).

▇▇▇ The Commissioner's representative found that Baker was originally hired with the understanding that she would not have

to work nights. Undeniably, the employer breached that agreement, despite Baker's complaints. Baker therefore had good cause to resign.

### II

▇▇▇ The Commissioner's representative determined that Baker did not meet her burden of proving eligibility for benefits, because, by continuing to work after complaining, she waived any breach of her employment agreement which might ordinarily have constituted good cause to quit.

Although the Minnesota courts have not expressly addressed this issue, the Vermont Supreme Court has twice considered whether an employee may waive good cause to quit. In *Seymour v. Dept. of Employment Security*, 137 Vt. 79, 399 A.2d 519 (Vt.1979), the Vermont Department of Employment Security determined that, although the employer had breached an agreement to provide transportation to work sites, the employee had waived the breach by using his own car and by failing to object during the four weeks of his employment. The Vermont Supreme Court reversed, concluding that the employee had good cause to resign and did not waive the breach:

> By the employer's failure to provide transportation, the claimant was unreasonably placed in a position which rendered continued employment impossible. To insist that he waived good cause through a good faith effort to remain employed is to ignore the evidence of the employer's fault.

*Id.* at 520.

In *Cook v. Dept. of Employment and Training*, 143 Vt. 497, 468 A.2d. 569 (Vt. 1983), the Vermont court, under different circumstances, stated:

> We do not suggest that claimant could have resigned only during the pendency

---

2. The Commissioner's representative found:
   In early 1984 the employer changed the schedule from all day to night work two to three nights a week. [Baker] originally took the job with the understanding she would not have to work nights. [Baker] on occasion complained to her superior, but they would not stop scheduling her at night. Regardless, [Baker] continued to work the night shift.

of the breach in order to be eligible for benefits. * * * But when an employee, either expressly or impliedly, consents to the occurrence of an event that could provide the basis for good cause to resign, then it would be clearly contrary to the purposes of the unemployment compensation laws to allow at a later date the payment of benefits on the basis of that earlier event.

*Id.* at 573 (citations omitted). In *Cook* the employer had failed to provide a bonus, but had assured the claimant that he would receive two bonuses the following month. The court found that the claimant had accepted the untimeliness of the bonus, specifically noting that the claimant's resignation was not motivated by the failure to receive the bonus. Here, on the other hand, Baker's resignation was shown to have been motivated by the changed schedule.

Were we to adopt the doctrine of waiver in this case, Baker would be placed in a "Catch–22" situation. If she had resigned without complaining of the breach, she probably would have been disqualified from receiving unemployment compensation benefits. *See Burtman v. Dealers Discount Supply*, 347 N.W.2d 292 (Minn. Ct.App.1984) (an employee who does not report offensive work conditions to his employer before quitting forecloses a finding of good cause attributable to the employer). If she resigned after complaining, but before giving the employer adequate time to correct the situation giving rise to her good cause, the employer would not be charged with having caused the unemployment. *Larson v. Department of Economic Security*, 281 N.W.2d 667 (Minn.1979). Yet here, where Baker complained of the conditions and continued to work before resigning, the Commissioner would still deny her unemployment benefits.

To adopt the Commissioner's reasoning would penalize Baker for continuing to work instead of immediately quitting when her complaints went unheard. Such reasoning flies in the face of the purposes behind the unemployment compensation statutes, which encourage continued employment and were designed only as a fallback for persons "unemployed through no fault of their own." Minn.Stat. § 268.03 (1984). The Minnesota Supreme Court has not adopted the doctrine of waiver of good cause, and we decline to do so.

## DECISION

The employer's breach of the employment agreement constituted good cause for Baker to resign. Baker did not waive good cause by continuing to work after complaining of the breach.

Reversed.