Jerome KRANTZ, Relator,

v.

**LOXTERCAMP TRANSPORT, INC.,**
Commissioner of Jobs and
Training, Respondents.

No. C8–87–352.

Court of Appeals of Minnesota.

Aug. 4, 1987.

Robert D. Stoneburner, Paynesville, for relator.

Mark F. Uphus, Melrose, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St.

Paul, for respondent Commissioner of Jobs and Training.

Heard, considered and decided by LESLIE, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LESLIE, Judge.

Relator Jerome Krantz seeks review of a determination by the Commissioner of Jobs and Training that he imposed certain conditions upon his availability for work which, in effect, constituted a voluntary quit. Krantz also disputes the Commissioner's conclusion that he did not have good cause to quit. We affirm the Commissioner's finding that Krantz voluntarily quit his job; however, we conclude that he had good cause to do so, and therefore we reverse the Commissioner's determination that Krantz is disqualified from receiving unemployment compensation benefits.

## FACTS

Jerome Krantz was hired by the respondent Loxtercamp Transport in April 1984 to work full-time as a truck driver. Prior to his employment with Loxtercamp, Krantz had worked for approximately 15 years as an over-the-road truck driver. When he was hired by Loxtercamp, Krantz was told that his schedule would allow him to be home each weekend from Friday until Sunday, or for a similar period between four to five day hauls. According to Krantz, this promise was a significant reason why he decided to work for Loxtercamp.

In 1984 and 1985, Loxtercamp scheduled Krantz's hours of work as promised. In February 1986, however, a new manager, Nathan Shealy, kept Krantz out on the road for approximately three consecutive weeks. When Krantz received his paycheck for that three-week haul, he became upset with the amount of the check, claiming that an error had been made in Loxtercamp's favor. After discussing the matter with Shealy and the bookkeeper, Krantz made a statement indicating that he was unhappy with the three-week haul, and that in the future he would impose certain con-

ditions upon his availability for work. His exact words are disputed.

Shealy thereafter placed Krantz on "on-call" status for shorter-distance hauls, which were generally handled by another driver. On March 10, 1986, two of Loxtercamp's employees removed Krantz's personal possessions from the tractor normally assigned to him, so the tractor could be used for long distance hauls.

Krantz remained willing to work the schedule he had been promised when he was hired, and called Loxtercamp several times, unsuccessfully, to inquire about work.

When he received no more hauls, Krantz applied for unemployment compensation, claiming that, in effect, he had been laid off. Loxtercamp contested Krantz's claim for benefits, alleging that Krantz had imposed limited conditions upon his availability for work, which constituted a voluntarily quit. At a hearing held to resolve these conflicting claims, Shealy testified:

> He said * * * he would not be available to work for anything that had him gone over the weekend or over four or five days at a time. * * * And since we couldn't keep his pay straight if he was gone over the weekend, he would not be gone on weekends at all.

Krantz's testimony was somewhat confusing, although throughout the hearing he maintained that he wanted to remain employed pursuant to the terms and conditions under which he had been originally hired.

On the basis of the evidence presented at the hearing, the referee found that Krantz had told Loxtercamp he would no longer be willing to remain out on the road over the weekends. Based upon this finding, the referee concluded Krantz had voluntarily quit his position without good cause attributable to Loxtercamp.

Krantz appealed to a Commissioner's representative, who remanded for additional evidence. Following a second hearing, the referee found that at the time Krantz was hired, he was advised by Loxtercamp that he would be home on weekends; how-

ever, during the course of Krantz's employment, the nature of Loxtercamp's business changed so that drivers were required to make longer hauls. The referee found that Krantz had said he wouldn't make any more "long" runs, and that Loxtercamp had thereafter placed him on on-call status for short runs, which were generally handled by another driver.

On appeal, a Commissioner's representative affirmed the referee's findings of fact, and concluded that by electing to work short hauls, Krantz had voluntarily quit his job without good cause attributable to Loxtercamp.

## ISSUES

1. Did the Commissioner err by finding that Krantz voluntarily quit his position with Loxtercamp?

2. Did the Commissioner erroneously conclude that Krantz did not have good cause to quit?

## ANALYSIS

### I.

■ On appeal, this court will view the evidence in the light most favorable to the Commissioner's findings of fact, and will affirm those findings if there is evidence in the record reasonably tending to sustain them. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983).

■ Krantz claims he never stated he would not work weekends or over four or five days at a time. Rather, he argues he told Shealy he would not work two or three weeks in a row if his pay could not be kept straight. He also claims he simply indicated he would continue working under the terms and conditions promised when he was hired. According to Krantz himself, however, the initial arrangement under which he was hired allowed him to be home on weekends or after a four to five day haul. In addition, Krantz did agree himself at one point in his testimony that he had told Loxtercamp he wouldn't work any more weekends. Further, Shealy testified that Krantz had stated he would not work weekends or over four to five days at a time. This evidence supports the Commissioner's finding that Krantz stated he wouldn't work any more "weekend" trips.

The Commissioner's representative characterized this statement by Krantz as a voluntary quit. Whether an employee voluntarily quit his employment is a factual question. *Midland Electric, Inc. v. Johnson*, 372 N.W.2d 810, 812 (Minn.Ct.App. 1985). We will ordinarily defer to the Commissioner's factual findings without reweighing the evidence to determine where the preponderance lies. *Nyberg v. R.N. Cardozo & Brother, Inc.*, 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954). We therefore uphold the Commissioner's determination that Krantz's statement to Shealy constituted a voluntary quit.

### II.

■ Whether an employee had "good cause" to resign is a question of law which may be independently reviewed by this court. *Forsberg v. Depth of Field/Fabrics*, 347 N.W.2d 284, 286 (Minn. Ct.App.1984). An employee who voluntarily resigns has the burden of proving that the resignation was with good cause attributable to the employer. *Id.*

■ This court has defined "good cause attributable to the employer" as follows:

"Good cause attributable to the employer" embraces situations where employees, through no fault of their own, leave their employment due to factors or circumstances directly connected therewith.

*Helmin v. Griswold Ribbon and Typewriter*, 345 N.W.2d 257, 261 (Minn.Ct.App.1984) *pet. for rev. denied* (Minn. June 12, 1984). An employer's breach of an employment contract constitutes good cause for the employee to quit. *Id.* In *Forsberg*, 347 N.W.2d at 286, this court also stated:

The test for "good cause attributable to the employer" is whether the employee's reason for quitting was compelling, whether it was real and not imaginary, substantial and not trifling, reasonable and not whimsical or capricious.

Here, Krantz indicated to Loxtercamp that he was willing to continue working the schedule he had been promised when he was employed. This statement does not evidence a desire to impose new conditions upon his employment; rather, it is undisputed that when Krantz was originally hired, he was told he would be home on weekends, or for a similar stretch of time after four or five day hauls. Krantz remained willing to continue working that schedule. *Cf. Hogenson v. Brian Knox Builders,* 361 N.W.2d 163 (Minn.Ct.App. 1985) (claimant had voluntarily discontinued his employment without good cause attributable to the employer where employee refused suitable offer of employment from employer). The issue, then, is whether Krantz had good cause to quit when Loxtercamp's business changed and required him to work a different schedule.

*Baker v. Fanny Farmer Candy Shops, No. 154,* 394 N.W.2d 564 (Minn.Ct.App. 1986) involved similar facts. There, a salesperson/bookkeeper at a candy shop had been hired with the understanding that she would only be required to work days; however, several years later the employer began requiring her to work two or three night shifts per week. The employee complained, but nothing changed, and she eventually resigned. This court stated:

> The Commissioner's representative found that Baker was originally hired with the understanding that she would not have to work nights. Undeniably, the employer breached that agreement, despite Baker's complaints. Baker therefore had good cause to resign.

*Id.* at 566.

Here, Krantz's statement to Shealy indicating that he would only work his previous schedule may be viewed as a complaint prior to resignation, since he did not actually resign at that point—indeed, the Commissioner's representative found that he called in asking for work several times thereafter.

The Commissioner's representative distinguished *Baker* as follows:

> Furthermore, we cannot hold that the employer materially breached the contract of employment by giving the claimant and the other drivers longer hauls as time went on. The nature of the employer's hauling business gradually changed from short hauls to longer ones; this resulted in more mileage and hence more pay for the drivers; and the record does not show any objections being raised by the claimant until after he returned from the one and only three week trip at the end of February. There was no showing that hauls of three weeks' duration were going to be a regular thing in the future; and we are not persuaded that the average reasonable employee who valued his job would have quit it for the reasons advanced by the claimant. * * *

We disagree with this analysis. Whether Loxtercamp's business changed gradually or suddenly, there is no dispute that Krantz took the job with Loxtercamp because of the hours. Loxtercamp's breach of its promise constituted good cause attributable to the employer for Krantz to quit.

### DECISION

Krantz's refusal to work weekends constituted a voluntary quit. Because Krantz was promised when he was hired that he would not have to work weekends, he had good cause attributable to the employer to quit.

Affirmed in part and reversed in part.