Gloria A. HAYES, Relator,

v.

K–MART CORPORATION, Respondent,

Commissioner of Employment and Economic Development, Respondent.

No. C1–02–2056.

Court of Appeals of Minnesota.

July 22, 2003.

Katherine L. MacKinnon, St. Louis Park, MN, for relator.

K–Mart Corporation, Minneapolis, MN, respondent.

Lee B. Nelson, Philip B. Byrne, M. Kate Chaffee, Department of Employment and Economic Development, St. Paul, MN, for respondent Commissioner of Employment and Economic Development.

Considered and decided by KALITOWSKI, Presiding Judge, RANDALL, Judge, and SCHUMACHER, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

Relator Gloria A. Hayes appeals from respondent Commissioner of Employment and Economic Development's determination that she was disqualified from receiving unemployment benefits because she voluntarily quit her employment without good cause attributable to her employer, respondent K–Mart Corporation. We reverse.

## FACTS

Hayes began working at a K–Mart store in Minneapolis in November 1996. Pursuant to K–Mart policy, Hayes was scheduled to receive an annual wage adjustment each November. By March 2001, Hayes had not yet received her November 2000 wage adjustment. She met with the store manager, who gave her the annual wage adjustment retroactive to the previous November, promoted her to manager of the toy department, and gave her a raise in conjunction with the promotion.

At the same meeting, Hayes informed the manager that she wanted an hourly raise in addition to the raise she received

in conjunction with the promotion. The manager told Hayes the two would meet again in May and "he would do something about a raise." Despite persistent effort, Hayes was unable to schedule a meeting with the store manager in May or after. In November 2001, Hayes received her annual scheduled pay adjustment. In June 2002, when Hayes learned of the manager's imminent departure from the store, she again asked him about the raise. He told her he would "take care of it before he left." The manager did not get Hayes the raise before he left.

In June 2002, Hayes quit her job because of K–Mart's failure to give her the pay raise and because of her work load, which she considered excessive for including tasks typically assigned to other managers. Before quitting, Hayes rejected an offer of a temporary raise of $.50 per hour from the store human resources manager, who conceded at the time that she was not authorized to offer the raise.

Hayes filed a claim for unemployment benefits with the Minnesota Department of Employment and Economic Development. An unemployment law judge determined Hayes was disqualified from receiving benefits under Minn.Stat. § 268.095, subd. 1(1) (2002) because she quit her job without a good reason caused by the employer. On appeal, a representative of the Commissioner of Employment and Economic Development also concluded Hayes was disqualified from receiving unemployment benefits because neither the failure to grant a promised raise of an unspecified amount nor the requirement that Hayes perform other managers' tasks constituted good cause to quit.

## ISSUE

Did Hayes quit for good cause attributable to her employer such that she qualifies for unemployment benefits under Minn.Stat. § 268.095, subd. 1(1) (2002)?

## ANALYSIS

A claimant who quits employment for a good reason caused by the employer shall not be disqualified from receiving unemployment benefits. Minn.Stat. § 268.095, subd. 1(1) (2002). A good reason caused by the employer is one "that is directly related to the employment and for which the employer is responsible" and "is significant and would compel an average, reasonable worker to quit and become unemployed rather than remaining in the employment." Minn.Stat. § 268.095, subd. 3(a)(1), (2) (2002).

On appeal from a decision of the commissioner's representative concerning unemployment benefits, this court reviews findings of fact in the light most favorable to the decision and will not disturb those findings as long as there is evidence in the record that reasonably tends to sustain them. *Ress v. Abbott N.W. Hosp., Inc.,* 448 N.W.2d 519, 523 (Minn.1989). Whether an employee voluntarily quit is a question of fact for the commissioner. *Shanahan v. Dist. Mem'l Hosp.,* 495 N.W.2d 894, 896 (Minn.App.1993). Whether a claimant is properly disqualified from the receipt of unemployment benefits is a question of law, which this court reviews de novo. *See Markel v. City of Circle Pines,* 479 N.W.2d 382, 384 (Minn.1992).

■ It is undisputed Hayes voluntarily quit; the issue is whether Hayes met her burden of proving her resignation was for good cause attributable to K–Mart. *See Marz v. Dep't of Employment Servs.,* 256 N.W.2d 287, 290 (Minn.1977) (stating employee has burden of proving resignation was for good cause attributable to employer). Hayes argues the promise to give her a raise was part of her employment agreement with K–Mart, and the failure to

grant the raise constituted a substantial breach of the employment agreement and gave her good cause to quit attributable to K–Mart. We agree.

■ The commissioner's representative found the K–Mart store manager made and breached an oral promise to get Hayes a pay raise in addition to the March 2001 raise. The record supports this finding. "Good cause to quit is generally found where an employer has breached the terms of an employment agreement." *Kehoe v. Minn. Dep't of Econ. Sec.*, 568 N.W.2d 889, 891 (Minn.App.1997) (citation omitted); *see also Helmin v. Griswold Ribbon & Typewriter*, 345 N.W.2d 257, 261 (Minn.App.1984), *review denied* (Minn. June 12, 1984). The employment agreement does not have to be formal or written. *See Krantz v. Loxtercamp Transp., Inc.*, 410 N.W.2d 24, 27 (Minn.App.1987) (holding employer's breach of oral promise that employee would not have to work weekends constitutes good cause for employee to quit); *Baker v. Fanny Farmer Candy Shops No. 154*, 394 N.W.2d 564, 566 (Minn.App.1986) (holding employer's violation of oral "understanding" that employee would not have to work nights gives employee good cause to quit).

Whether a breach of promise to grant a raise gives an employee good cause to quit is a matter of first impression in Minnesota. *Cf. The Gathering v. Review Bd. of Ind. Employment Sec. Div.*, 495 N.E.2d 207, 210 (Ind.Ct.App.1986) (holding employer's failure to grant promised promotion and pay raise gave employee good cause to quit); *Shorey v. Dep't of Employment Sec.*, 135 Vt. 414, 377 A.2d 1389, 1390 (1977) (holding employee quit for good cause where employer did not grant promised raise).

■ K–Mart argues that the manager's promise was not a legally enforceable provision of Hayes's employment agreement because it lacked specificity, was not supported by consideration, and was conditioned on Hayes's continued satisfactory performance. We disagree. An oral promise to modify particular terms of at-will employment can become part of the employment agreement if the requirements for the formation of a unilateral contract are met: communication of a definite offer and acceptance for valuable consideration. *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626–27 (Minn.1983).

■ Here, the manager's promise of a pay raise was a term of employment suitable for inclusion in a unilateral employment contract. *See Brown v. Tonka Corp.*, 519 N.W.2d 474, 477 n. 1 (Minn.App.1994) (discussing vacation pay as term of unilateral contract). Where the employer promises supplemental compensation, the employer's decision to leave the amount of the supplement unspecified, or to condition the supplement on the employee's satisfactory performance, does not render the contract unenforceable. *See Wilson v. Duluth Filter Co.*, 311 Minn. 475, 479, 250 N.W.2d 832, 835 (1977) (holding enforceable employer's oral offer for unspecified supplemental compensation in exchange for employee's promise to maintain level of work performance); *Hartung v. Billmeier*, 243 Minn. 148, 150–51, 66 N.W.2d 784, 787–88 (1954) (holding enforceable employer's promise of bonus of unspecified amount made after employee started working).

■ But *Krantz* and *Baker* are clear that where, as here, the employment agreement includes a promise concerning the terms or conditions of employment, a breach of that promise constitutes good cause to resign. *See Krantz*, 410 N.W.2d at 27; *Baker*, 394 N.W.2d at 566. We therefore hold K–Mart's failure to grant Hayes the promised pay raise violated her

**554**

employment agreement and gave her good cause to quit.

The commissioner's representative determined that Hayes's failure to show the specific amount of the promised raise was fatal to her benefits claim. The representative reasoned that the adverse impact of the failure to grant a promised raise is analogous to that of a wage reduction for the purposes of a good-cause analysis— that is, the analysis should focus on the amount of the promised raise to determine whether the degree of prospective financial loss caused by the failure to grant the raise is sufficient to constitute good cause to quit. This focus on the quantity of the adverse financial impact is inapposite.

■ It is true a substantial wage reduction can constitute good cause to quit attributable to the employer. *See, e.g., Sunstar Foods, Inc. v. Uhlendorf,* 310 N.W.2d 80, 84–85 (Minn.1981) (holding 25% wage decrease constituted good cause to quit). But we agree with Hayes that the failure to honor the promise, and not the amount of financial loss caused by the ungranted raise, is the dispositive factor in determining whether there was a breach of the employment agreement.

Because we hold K–Mart breached the terms of the employment agreement by failing to grant the raise, we do not address Hayes's alternative argument that the commissioner's representative erred by not considering whether the combined effect of the ungranted raise and K–Mart's requirement that Hayes perform certain tasks typically assigned to other managers gave Hayes good cause to quit.

### DECISION

K–Mart's failure to grant Hayes a promised pay raise substantially breached the employment agreement, giving Hayes good cause to quit attributable to K–Mart. She is therefore not disqualified from re-

ceiving unemployment compensation benefits under Minn.Stat. § 268.095, subd. 1(1) (2002). We reverse the decision of the Commissioner of Employment and Economic Development.

**Reversed.**