2012 VT 8

**Katherine ST. MARTIN v. DEPARTMENT OF LABOR and H&B LeFevre, EMS, LLC**

[38 A.3d 67]

No. 11-084

¶ 1. January 30, 2012. Claimant appeals the Employment Security Board's determination that she left the employ of her last employing unit voluntarily without good cause attributable to her employer, thereby disqualifying her from receiving unemployment benefits. She argues that her decision to quit her job was with good cause because she reasonably believed she would not receive a paycheck for her work. We reverse.

¶ 2. The facts as found by the Board are generally undisputed. Claimant worked for almost two years for her employer as an assistant financial supervisor, which required her to prepare payroll information weekly. At some point, her employer began to have financial difficulties, and the payroll submission day was moved back to later in the week.

¶ 3. On October 14, 2010, the president of claimant's employer told claimant not to submit payroll because there were inadequate funds to cover the checks. The president then attempted to borrow money to meet the payroll, which ultimately proved "fruitless." The chief of operations persuaded the president to close the business and pay the employees. Claimant submitted the payroll after being given permission to do so by the president. She then printed the checks, and distributed them to the employees. After the president told claimant that the checks would bounce due to lack of funds, claimant quit. The business closed that day,* and claimant filed her claim for unemployment compensation benefits on October 19. Fortuitously, however, the payroll checks did clear, though the record does not disclose why this is so. Claimant successfully cashed her check on October 18, and she received another paycheck dated October 22, which was also successfully cashed.

¶ 4. The Board, adopting wholesale the legal conclusions of the Administrative Law Judge (ALJ), concluded that claimant's decision to quit her job was "based on adverse circumstances which had not yet occurred and which in fact did not occur." The Board concluded that claimant's belief that she would not be paid was only a possibility, and that therefore she did not have good cause attributable to her employer to quit at that time. Thus, the Board held that she failed to meet her burden and was disqualified from receiving benefits. The Board based its decision entirely on *Kasnowski v. Department of Employment Security*, which stated that "a quit for something that is only a future possibility and has not actually yet occurred does not justify the award of benefits." 137 Vt. 380, 382, 406 A.2d 388, 390 (1979).

¶ 5. Claimant appeals from this decision and argues that there was good cause attributable to her employer because she

---

* The Board's decision does not specify when the business was closed, though the president's affidavit states that she "closed the doors" on October 14. The president's affidavit also states that she "continued to remind [claimant and another employee] that [employer] wasn't going to make payroll or pay any other bills."

was told that future paychecks would not issue or would bounce, or alternatively, that *Kasnowski* should be reversed or limited to its facts. Claimant's basic argument is that wages go to the core of the employee-employer relationship. Because her employer made an affirmative statement to her that it could not, and would not, pay her for the work she had already done, she argues that she had a present, reasonable expectation of not being paid and thus good cause attributable to her employer to quit. The Department of Labor contends that claimant resigned from her position when continued work was still available, and that quitting in anticipation of an event that is only a possibility cannot constitute good cause.

¶ 6. The sole issue here is whether claimant had good cause attributable to her employer for voluntarily leaving her job. The Board's decision is entitled to great weight on appeal. *Allen v. Dep't of Emp't Sec.*, 141 Vt. 132, 134, 444 A.2d 892, 893 (1982). We will affirm the Board's findings if they are supported by credible evidence, even if there is substantial evidence to the contrary. *Cook v. Dep't of Emp't & Training*, 143 Vt. 497, 501, 468 A.2d 569, 571 (1983). The Board's conclusions of law will be affirmed if they are fairly and reasonably supported by the findings of fact. *Bouchard v. Dep't of Emp't & Training*, 174 Vt. 588, 589, 816 A.2d 508, 510 (2002) (mem.). Where the Board's findings or conclusions are erroneous, however, we must reverse. *Bombard v. Dep't of Labor*, 2010 VT 100, ¶ 6, 189 Vt. 528, 12 A.3d 533 (mem.).

¶ 7. A claimant is entitled to unemployment benefits only if made eligible by statute. A claimant is disqualified from receiving unemployment compensation if she voluntarily terminates employment "without good cause attributable to such employing unit." 21 V.S.A. § 1344(a)(2)(A). In a voluntary termination case such as this one, the claimant has the burden of showing two things: (1) a sufficient reason to justify the quit; and (2) that the reason for the voluntary separation was attributable to the employer. *Allen v. Dep't of Emp't & Training*, 159 Vt. 286, 289, 618 A.2d 1317, 1319 (1992). A reasonableness standard governs the good cause determination. *Isabelle v. Dep't of Emp't & Training*, 150 Vt. 458, 460, 554 A.2d 660, 661 (1988). This means that we look to "what a reasonable person would have done in the same circumstances." *Id.* After review of the case under these standards, we conclude that the Board's decision must be reversed.

¶ 8. In *Kasnowski*, which the Department of Labor argues dictates the outcome in this case, the claimant was a seasonal employee who had agreed to longer work hours during "high volume periods." 137 Vt. at 381, 406 A.2d at 389. These hours were not specified, however, and the precise terms of the agreement were in dispute. *Id.* On New Year's day, the claimant had a discussion with his employer about being tardy and the expectation that he would work "long hours." *Id.* He told his employer that he needed seven hours of sleep between shifts, but was told that he "could not be guaranteed this over Washington's Birthday." *Id.* at 381-82, 406 A.2d at 389. He then requested his paycheck and left. *Id.* at 382, 406 A.2d at 389. The Board concluded that he "chose to quit for speculative personal reasons" and was thus disqualified. *Id.* We held that the separation was voluntary "and for personal reasons not attributable to the employer." *Id.* We stated — as a corollary to a previous case in which we held that an employee was not disqualified from benefits for anticipatory misconduct — that a quit for something that is a mere "future possibility" demands disqualification. *Id.* at 382, 406 A.2d at 390. Thus, we required a "present and actual" event amounting to good cause to occur before a claimant is entitled to benefits.

¶ 9. The present case is distinguishable from *Kasnowski* where the claimant was

told he could not be "guaranteed" seven hours of sleep between shifts. 137 Vt. at 381, 406 A.2d at 389. Here, claimant was told that there was not enough money in the company account to cover checks and was directed not to submit the payroll. Claimant was aware that, after attempting to borrow money, the chief of operations convinced the president to close the business and submit paychecks to the employees. The president then told claimant to expect her paycheck to bounce. In clear unequivocal terms, claimant was told that she should expect no compensation for her labor, past and future. This is not a case in which a claimant has quit based on a future prediction or speculative personal reasons; rather, claimant faced the present reality that she would not be paid for her work. Thus, we conclude that claimant did not quit because of the mere future possibility of a breach. The breach, giving rise to good cause to quit, occurred when the president informed her that she would not be paid. To conclude otherwise would be offensive to common sense and out of line with the remedial purposes of the unemployment compensation scheme. See *Fleece on Earth v. Dep't of Emp't & Training*, 2007 VT 29, ¶ 5, 181 Vt. 458, 923 A.2d 594 (stating that unemployment compensation act is a "remedial law, having benevolent objectives, and must be given liberal construction").

¶ 10. Having concluded that *Kasnowski* is inapplicable to the present situation, it is important to consider the context in which claimant formed her belief that she would not be paid. This is because we analyze a voluntary quit situation from the perspective of "what a reasonable person would have done in the same circumstances." *Isabelle*, 150 Vt. at 460, 554 A.2d at 661. The Department of Labor on appeal concedes that claimant "had access to the employer's financial data and was in a position to be concerned about there being sufficient funds to cover the upcoming payroll" and that "the employer herself told [claimant] that she was going to have trouble meeting payroll." Claimant's specialized knowledge about her employer's grim financial situation and the statement from the president of the company about not receiving a paycheck lend strong support to the reasonableness of her belief that she would not be paid.

¶ 11. Finally, we note that the Board, aided by the clarity of hindsight, improperly focused on the fact that checks were later cashed "without any problem." Though claimant quit because she believed she would not receive a paycheck for her work, the Board noted that her decision to quit was "based on adverse circumstances which had not yet occurred *and which in fact did not occur*." (Emphasis added.) The focus in a good cause inquiry is what the claimant reasonably believed at the time of separation, not what eventually comes to pass. *Isabelle*, 150 Vt. at 460, 554 A.2d at 661. We focus on what a reasonable person would have done in like circumstances. *Id.* Thus, later-occurring events are generally irrelevant. Although the checks did clear, this fact does not render claimant's belief *at the time of the quit* unreasonable. She was given credible information from the president of her company, which was coupled with personal knowledge about the company's ongoing financial problems.

¶ 12. In sum, we hold that claimant should not be penalized for leaving her job where she was told to expect no paycheck for her labor. The president's statement to claimant was a present and actual event amounting to good cause.

*Reversed.*