*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-053

JUNE TERM, 2014

| | | |
|---|---|---|
| Rebecca Spaulding | } | APPEALED FROM: |
| | } | |
| | } | Employment Security Board |
| v. | } | |
| | } | |
| Department of Labor | } | |
| (G.S. Precision, Employer) | } | DOCKET NO. 09-13-114-05 |

In the above-entitled cause, the Clerk will enter:

Claimant appeals from a decision of the Employment Security Board denying her claim for unemployment benefits. We reverse.

On August 7, 2013, after working for G.S. Precision for twenty-eight years as a machine tool operator, claimant gave her employer two-week notice of her intention to quit her job. On August 23, she filed a claim for unemployment benefits. The claims adjudicator determined that claimant had left her employment voluntarily without good cause attributable to her employer and thus was disqualified for benefits. See 21 V.S.A. § 1344(a)(2)(A). Following a telephone hearing in which claimant was the only person to present any testimony, the administrative law judge (ALJ) upheld the decision of the claims adjudicator. After obtaining legal representation, claimant filed a brief and presented oral argument before the Employment Security Board, which upheld the ALJ's determination in a 2-1 split decision. On appeal to this Court, claimant argues that the Board made erroneous findings and conclusions and also failed to make findings on key facts raised in her uncontested testimony concerning her reasons for quitting her job.

At the hearing before the ALJ, claimant stated, in response to the ALJ's query, that she gave notice on August 7 because: (1) she had received a written warning the day before based on false information; and (2) her supervisor had been harassing her for the past two years. She alleged that she had been constructively terminated by virtue of her supervisor belittling and humiliating her. As examples of this behavior, she testified that he would call her a dizzy blonde and that he made her ask permission every time she changed a tool, even though she had been working for the company for twenty-eight years.

She testified that approximately one year before she gave notice she filed a complaint with the Employee Assistance Program (EAP), but was told that being a "jerk" was not unlawful and that she should contact her human resources (HR) department, which she did. According to claimant, the HR department told her that she would have to show a pattern of harassing behavior by the supervisor. She speculated that the HR department must have said something to him because she noticed that his behavior "got a little bit better for a while." She claimed, however, that his behavior toward her worsened after he found out at a personnel meeting that she had complained to the EAP about him.

Claimant further testified that about a week before she quit, her supervisor spitefully denied her request to allow her to take paid vacation time for a single sick day. She testified that years earlier the company had taken away sick time and personal days so that employees were forced to take accumulated vacation time if they wanted to get paid for sick days. She stated that on the day in question, she called in and asked for permission to take vacation time for a sick day. Claimant later learned when she got her next paycheck that she was not paid for that day. According to claimant, when she asked her supervisor why, he simply said "because I didn't approve it, and just nodded his head, kind of like, take that or that's that." She alleged that he denied the vacation time to retaliate against her because she had reported his harassing behavior to the EAP and the HR department.

She complained to HR personnel about her supervisor denying her vacation time, but, according to claimant, days passed with no response. When she was finally called into a meeting with her supervisor and HR personnel on August 6, 2013, she assumed that they were going to address her complaint that the supervisor had retaliated against her by refusing to allow her to take vacation time on a sick day. Instead, she was given a written warning for low productivity and for not following procedure by not getting her supervisor's permission when changing tools. She testified that in fact she had properly followed procedure because her supervisor had told her that she could obtain permission from another supervisor or lead person when her supervisor was not around, and she always did that.

The next day, claimant gave her two-week notice. She testified that she told her supervisor's boss that she was giving her notice because her supervisor was harassing her. According to claimant, when she asked the boss whether she should give notice, he advised that she should if she "didn't want to burn any bridges." When the ALJ asked claimant whether she would have given her notice on August 7 if she had not been given a written warning the day before, she responded: "Probably not. I would have probably endured it some more, because like I said I had been enduring this for some time." Claimant further stated that she could see that the company was trying to push her out and in fact had already hired a young man to take her place. According to claimant, she "just couldn't take anymore" after years of harassment.

Claimant's employer did not take part in the proceedings below, and thus claimant's testimony was uncontroverted. Moreover, neither the ALJ nor the Board found any of her testimony lacking in credibility. In determining that claimant left her employment without good cause attributable to the employer, the ALJ found that claimant felt like she was being harassed, but that her employer acted within its discretion in not allowing her to use vacation time and in giving her a written warning based on its assessment of her work. The two-member Board majority added a few findings but essentially adopted the ALJ's reasoning, concluding that: (1) claimant's allegations of ill treatment by her supervisor did not rise to the level of sexual harassment or a hostile work environment; (2) nothing in the record suggested that the August 6 written warning contained a threat of termination; (3) claimant did not exhaust her remedies in seeking compensation for the sick day that she was not paid for; and (4) her stated reason for quitting was unhappiness at receiving a written warning, but it was the employer's prerogative to evaluate her work.

The dissenting Board member concluded that claimant quit for good cause attributable to her employer because "claimant's supervisor crossed the line when he neither approved the use of leave nor notified claimant of his decision [not] to do so." The dissenting member stated that as a result of the supervisor's seemingly spiteful conduct, claimant unexpectedly received a reduced paycheck, supporting claimant's decision to quit because "she just couldn't take it anymore."

2

We agree with claimant that the findings of the Board majority do not support its decision to deny her unemployment benefits. Claimant gave uncontroverted testimony that: (1) her supervisor humiliated and belittled her over a two-year period; (2) his harassing behavior increased after he learned of her complaints against him; (3) he denied her vacation time for a sick day for no other reason than to retaliate for her complaining about him; (4) the company's HR department never responded to this allegation; (5) she was given a written warning in part for not following procedure when in fact she had followed the procedure that her supervisor claimed she violated; and (6) her employer was constructively terminating her, as evidenced by the fact that it had already hired a young man to replace her. Neither the ALJ nor the Board addressed any of these allegations. The Board noted that claimant felt harassed but found only that her supervisor's conduct did not rise to the level of sexual harassment or a hostile work environment. There were no findings on: (1) whether the supervisor's conduct, and particularly his action in denying her vacation time for a sick day, was retaliatory in nature; (2) whether the written warning for not following procedure was justified or was in fact part of the supervisor's retaliatory conduct; or (3) whether the employer was looking to force her out and in fact had already hired someone to replace her.

Although the determination of whether a resignation is for good cause is a matter within the special expertise of the Board and must be proved by the claimant following a voluntary quit, the established facts must support the result reached by the Board. Burke v. Dep't of Emp't Sec., 141 Vt. 582, 584 (1982). An employee harassed on the job may have good cause to quit, Allen v. Dep't of Emp't & Training, 159 Vt. 286, 289 (1992), particularly if the harassing behavior is in retaliation for the employee's complaints regarding the work environment. There is no bright-line threshold for determining an intolerable work environment; rather, each situation must be analyzed individually based on "what a reasonable person would have done in the same circumstances." Bombard v. Dep't of Labor, 2010 VT 100, ¶ 7, 189 Vt. 528 (mem.) (quotation omitted). In this case, the record does not support the Board's finding that claimant quit her job solely based on having received a written warning the day before. Rather, claimant testified that the unjustified written warning was the "last straw" that motivated her to quit her job following years of harassment with minimal response from the employer. Given claimant's uncontroverted testimony noted above—which was neither inherently incredible nor found to be lacking in credibility—the Board's failure to make findings on critical questions concerning her decision to quit fatally undercuts its determination that she did not leave her employment for good cause attributable to her employer. On this record, claimant is entitled to unemployment benefits.

Reversed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Geoffrey W. Crawford, Associate Justice

3