## Richard B. Hamilton v. Department of Employment Security

[428 A.2d 1108]

No. 182-80

Present: Barney, C.J., Larrow, Billings and Hill, JJ., and
Shangraw, C.J. (Ret.), Specially Assigned

Opinion Filed February 4, 1981

*Susan M. Sussman* and *Gretchen Bailey,* Vermont Legal Aid,
Inc., Burlington, for Plaintiff.

*M. Jerome Diamond,* Attorney General, and *Bennett Evans
Greene,* Assistant Attorney General, Montpelier, for Defendant.

Hill, J. The employer, the State of Vermont, appeals a de-
cision of the Employment Security Board granting unemploy-
ment benefits to claimant Hamilton after concluding that he
was discharged and not for misconduct connected with his
work. See 21 V.S.A. § 1344. We reverse.

Claimant was unemployed and in reduction in force status

(RIF) before being hired by the Vermont Department of Labor and Industry as manager of the apprenticeship and training program. As a former state employee, employment rights under the Vermont State Employees contract gave him the option, which he accepted, of taking the job on a probationary basis. During the course of the probationary period the commissioner and the claimant had several discussions concerning the claimant's job performance. The commissioner became increasingly dissatisfied with the claimant's performance and in late August or early September 1979 told claimant that he had "grave reservations" about the claimant's ability to do the job. On October 5, 1979, he expressed his concern in a letter to the claimant in which he recited examples of poor performance, advised the claimant that his progress would be carefully assessed during the next two or three weeks, and warned that failure to show marked improvement could result in dismissal.

On October 21, or 22, the claimant and commissioner met and mutually concluded that it would be best for all parties if the claimant's employment ended. The commissioner had previously inquired of the Department of Personnel whether he had sufficient grounds to discharge the claimant and was told he did not.

On October 23, the claimant submitted a written resignation to the commissioner, in which he confirmed that he was quitting by mutual agreement and that, due to their divergent views of apprenticeship, he felt unable to fill the position.

The Board concluded that:

> Although there is no express evidence in the record indicating that the commissioner advised the claimant that he would be discharged if he did not resign during their conversation on October 21 or 22, 1979, it is clear that the commissioner both wanted and encouraged the claimant to terminate his employment. Under these circumstances, the claimant's leaving of this employment cannot be considered to have been voluntarily undertaken on his part, but rather must be viewed as having been effectively coerced by his employer. Under these circumstances, we conclude that the claimant was discharged by his employer.

The sole issue raised by the employer is whether the claimant was discharged or whether he voluntarily quit without good cause attributable to the employer so as to be ineligible for unemployment compensation benefits under 21 V.S.A. § 1344(a)(2)(A). There is no claim that the claimant was discharged for misconduct connected with his work.

The employer argues that the Board's conclusion that the claimant was coerced into terminating his employment is not supported by the evidence. We agree.

■ Although this Court will not disturb the findings of the Employment Security Board "unless, considered as a whole, there is no evidence to support the decision," *Kasnowski* v. *Department of Employment Security*, 137 Vt. 380, 381, 406 A.2d 388, 389 (1979), we are mindful that the conclusions of the Board must be supported by the findings of fact.

Viewing the facts found by the Board in the light most favorable to the prevailing party, see *Kasnowski, supra,* we find support for the Board's conclusion that there is "no express evidence in the record indicating that the commissioner advised the claimant that he would be discharged if he did not resign." Agreeing with this, we must determine whether any facts by the Board support the additional conclusion that the claimant was coerced into resigning. The only finding which the Board referred to in arriving at this conclusion was the fact the commissioner both wanted and encouraged the claimant to terminate his employment. This is not enough to justify a conclusion of coercion.

The claimant points to evidence that appellant was dissatisfied with his work. There is no dispute as to that fact. He further points to the contents of a letter to him in which the employer's problems with the claimant's job performance were detailed. The claimant interprets this letter as showing appellant's intention to discharge him. This is not a fair interpretation of that letter. The specific language is as follows: "I will feel compelled to take those steps which I consider appropriate, *up to and including* dismissal from State service." The Board itself found that claimant was warned that "failure to show marked improvement *could result* in dismissal." A quit for something that is only a future possibility does not justify the award of benefits. *Kasnowski, supra,* 137 Vt. at 382, 406 A.2d

at 390. We have previously held that an employer allowing an employee the alternatives of "shaping up or shipping out" does not provide support for concluding that a resignation is coerced. *Lane* v. *Department of Employment Security*, 134 Vt. 9, 11, 347 A.2d 454, 456 (1975).

The fact that the claimant might have been discharged eventually could well have been a factor in his resignation. An examination of the record discloses, however, that there was another factor in his decision to resign. There is uncontradicted testimony that the day before the claimant tendered his written resignation, the employer and he visited and mutually agreed that the claimant would terminate his employment. Evidence also shows that after consultation with the Personnel Department and further conversation, the claimant opted for that type of termination because he could retain his status under the contract provisions of RIF only if he resigned. It was his choice, then, to resign and retain an opportunity to obtain later employment with the State of Vermont. Under these circumstances, we cannot say that the claimant was coerced. If anything the resignation was contrived to favor the employee.

We conclude that the claimant voluntarily quit without good cause attributable to his employer. The disqualification set out in 21 V.S.A. § 1344(a)(2)(A) should have been imposed.

*The order of the Employment Security Board is reversed and the cause remanded.*