## Claude E. Spaulding v. Department of Employment Security

[433 A.2d 269]

No. 117-80

Present: Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.

Opinion Filed June 2, 1981

*William K. Sessions, III,* Middlebury, for Plaintiff.

*Matthew R. Gould,* Montpelier, for Defendant.

**Underwood, J.** The claimant contracted with a building contractor for the construction of a log home. The contractor, with the assistance of the claimant, as an unpaid laborer, erected the log home between May and September of 1978.

On March 12, 1979, the claimant began work as a carpenter for the same contractor. Shortly thereafter a problem devel-

oped with the claimant's recently constructed home. One of the logs was out of plumb, causing the roof to sag. During the spring and summer of 1979, the claimant repeatedly asked the contractor to come look at the house so that he could begin to correct the problem. The contractor procrastinated for nearly six months but finally agreed to look at the house on September 22 or 23, 1979.

The contractor did not show up at the house on either of those days, and when the claimant contacted him on September 24 to inquire why he had not come as promised, he said that he had been too busy. He did tell the claimant, however, that he intended to start the repair work on October 1, 1979. During the course of this same conversation, the contractor intimated that he knew that the log had been set improperly, as that was the way things had been done on that job. The claimant, obviously angered by the contractor's characterization of the workmanship that went into his home, suggested that the contractor ought to hire someone else at his own expense to fix the problems with the house. The contractor indicated he had no intention of paying anyone else to fix it.

The upshot of this parley was that the claimant left the employ of the contractor on September 24, 1979. The contractor did not show up at the claimant's house on October 1, 1979. The claimant subsequently instituted suit against the contractor for the allegedly improper construction of his log home.

On the same date on which the claimant terminated his employment, he filed a claim for unemployment compensation benefits. The claims examiner disqualified him for benefits on the ground that he had left his employment voluntarily without good cause attributable to his employer. He appealed, and on appeal, the appeals referee reversed the decision of the claims examiner and allowed the claimant his benefits. The director of the Unemployment Compensation Division then appealed to the Vermont Employment Security Board. The Board, in a two to one decision, reversed the appeals referee and disqualified the claimant for benefits on the ground that the cause for his leaving his job was not attributable to his employment, but rather to a dispute arising out of an arrangement between the two men prior to the commencement of the employment relationship.

It is from this decision that the claimant appeals to this Court.

It is the claimant's position that to continue his employment would have been impossible. The friction between him and his employer, he claims, would have made the job untenable. He also raised the further argument that to continue working for an employer who had admittedly performed shoddy work on his house would damage his reputation as a carpenter. Although the problem in the employer-employee relationship emanated from a dispute over a matter antedating his employment, the claimant nevertheless contends that he had good cause to quit and that the cause was directly attributable to the employing unit.

The appeal presents the following issue for review:

Did the claimant voluntarily leave the employ of his last employing unit without good cause attributable to such employing unit, 21 V.S.A. § 1344(a) (2) (A), when the cause of his leaving was a dispute between the employer and employee over a matter which antedated his employment?

21 V.S.A. § 1344(a) (2) (A) provides, in pertinent part, as follows:

(a) An individual shall be disqualified for benefits:
. . . .
(2) For any week benefits are claimed . . . until he has presented evidence to the satisfaction of the commissioner that he has performed services in employment for a bona fide employer and has had earnings in excess of six times his weekly benefit amount if the commissioner finds that such individual is unemployed because:

(A) He has left the employ of his last employing unit voluntarily without good cause attributable to such employing unit.

The contractor was the claimant's "employing unit," as defined in 21 V.S.A. § 1301(4), when he left the job.

■■ The burden is on the claimant to substantiate his claim. *Willard* v. *Vermont Unemployment Compensation Commission*, 122 Vt. 398, 403, 173 A.2d 843, 847 (1961). This

Court must determine whether the evidence before the Board reasonably tends to support its findings and whether the findings in turn support the Board's conclusions and decision. *Przekaza* v. *Department of Employment Security,* 136 Vt. 355, 356, 392 A.2d 421, 422 (1978).

■ The parties cite no case, from Vermont or elsewhere, for the proposition that a dispute arising between employer and employee over a matter totally unrelated to the employment relationship, and which antedated that relationship, gives rise to good cause, attributable to the employing unit, for the employee to voluntarily quit and collect benefits.

The claimant relies upon *Schneider* v. *Vermont Employment Security Board,* 133 Vt. 187, 333 A.2d 104 (1975), to support that proposition. In that case, the controversy arose between employer and employee over a work-related matter. Hence, the good cause for voluntarily quitting was attributable to the employing unit. He also cites *Przekaza, supra,* and *Chamberlin* v. *Department of Employment Security,* 136 Vt. 571, 396 A.2d 140 (1978). These cases do not involve a voluntary quit on the part of either employee. Each wanted to continue work. Przekaza, who was employed as a truck driver, could no longer drive when his license was suspended. Chamberlin could no longer work because he was incarcerated as a result of his conviction.

The claimant in the case at bar quit before giving the contractor a chance to follow through on his promise to start the repairs on claimant's house on October 1, 1979. The claimant's concern that he would not follow through or do a good job was speculative, and may have been unjustified. He struck too soon. He voluntarily chose to quit for personal reasons not attributable to his employer and accordingly subjected himself to the statutory disqualification. 21 V.S.A. § 1344(a) (2)(A). *Kasnowski* v. *Department of Employment Security,* 137 Vt. 380, 382, 406 A.2d 388, 389 (1979).

*Affirmed.*