# Debra Lea Harrington v. Department of Employment Security and First National Supermarkets, Inc.

[455 A.2d 333]

No. 334-81

Present: Barney, C.J., Billings, Hill and Peck, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed December 14, 1982

*Fred I. Parker* and *Ellen Mercer Fallon* of *Langrock Sperry Parker & Stahl,* Middlebury, for Defendant-Appellant.

*Matthew R. Gould,* Montpelier, for Defendant-Appellee.

**Hill, J.** This is an appeal from a decision by the Vermont Employment Security Board (the Board) granting claimant unemployment compensation benefits. Following the Board's decision, the employer, First National Supermarkets, Inc., filed a timely notice of appeal. We affirm.

The facts, as found by the Board, are as follows. From about September 1, 1979, through October 18, 1980, claimant was employed as a part-time clerk for First National Supermarkets. During the first twelve months of her employment, her duties consisted of operating the cash register and working in the employer's office. Prior to September, 1980, there is no indication in the record of any problems with claimant's job performance.

During the early part of September, 1980, claimant took a one-week vacation with her parents in California. While in California, she contacted her immediate supervisor at work regarding the possibility of a one-week extension of her vacation. Although there was some confusion as to whether claimant was requesting or demanding the extra week, her supervisor nonetheless granted the extension. Believing that claimant could no longer be relied upon, her supervisor and the store manager decided after consultation to temporarily suspend claimant. Instead, upon the claimant's return from California, the store manager attempted to fire her. Claimant immediately contacted the regional store supervisor to discuss the situation. As a result of this conversation, the regional supervisor ordered her reinstatement.

Thereafter, the nature of claimant's working conditions changed dramatically. She was assigned to new duties which she did not like and which were not entirely suited to her physical stature. In addition, despite the employer's assertions to the contrary, the Board found that claimant was required to work split shifts in direct violation of her union contract. Furthermore, claimant's schedule was altered so that she was now required to work more days with shorter hours, a change which clearly interfered with her commuting

situation. Finally, claimant had received word from several co-workers that the store manager was making derogatory remarks about her and her family in public.

As a result, on October 18, 1980, claimant informed the store manager that she was resigning due to intolerable working conditions. Claimant was denied unemployment compensation benefits, both in her initial application as well as at the subsequent referee hearing. However, after reviewing the record established at the referee hearing, the Board concluded that the above incidents, taken together and placed within the context of the store manager's unsuccessful attempt to fire claimant, constituted good cause attributable to the employer (thus avoiding the disqualification imposed by 21 V.S.A. § 1344(a)(2)(A)). Accordingly, since claimant had demonstrated good cause for leaving rather than continuing her employment, the Board reversed the earlier denial of benefits.

On appeal, the employer briefs several exceptions for our consideration. The employer's first contention is that the Board, in direct contravention of its own rules, accepted and in at least three instances considered new evidence at the Board hearing. The first relates to claimant's allegation that her employer was refusing to give her fair references for future employment; the second relates to claimant's assertion, not articulated at the referee hearing below, that the store manager had called her and her mother names *in their presence;* and the third relates to claimant's use of the words "listen babe" to supplement a statement allegedly made by the store manager which appeared in the referee hearing record.

When reviewing a referee's decision on appeal, the Board has the power to affirm, modify or reverse the decision. *Whitchurch* v. *Department of Employment Security,* 139 Vt. 566, 568, 433 A.2d 284, 286 (1981); *Kaufman* v. *Department of Employment Security,* 136 Vt. 72, 74, 385 A.2d 1080, 1082 (1978). When dealing with allegations relating to new evidence, and "[w]here the tribunal itself declares that statements given before it were not used in preparing findings, this Court will presume no use was made, unless the contrary is demonstrated." *State Highway Board* v. *Loomis,* 122 Vt.

344

125, 127, 165 A.2d 572, 574 (1960) (citing *Bloomstrand* v. *Stevens*, 104 Vt. 1, 4, 156 A. 414, 415 (1931)).

A review of the record in the instant case reveals that the Board, shortly after claimant voiced her suspicions concerning the allegedly unfair references, warned claimant that its review was limited to the referee hearing record. Moreover, the alleged new evidence was never incorporated into the Board's final findings of fact and conclusions of law. As a result, we also find claimant's allegation to the Board of name calling in her presence, which differed from the record below in that she had formerly testified that she had learned of such conduct from third parties, to be harmless in nature. *Id.*

■  With regard to claimant's use of the words "listen babe," the record reveals that at most it amounted to a mere embellishment of testimony already in the record. In situations such as this, where a claimant is not represented by counsel, we are confident that the Board is fully capable of ignoring such embellishments.

■■  The employer next asserts that the Board's findings of fact are unsupported by credible evidence and that its conclusions of law are not supported by the findings of fact. When reviewing a Board decision, "[t]his Court must determine whether the evidence before the Board reasonably tends to support its findings and whether the findings in turn support the Board's conclusions and decisions." *Spaulding* v. *Department of Employment Security*, 139 Vt. 562, 564–65, 433 A.2d 269, 270 (1981) (citing *Przekaza* v. *Department of Employment Security*, 136 Vt. 355, 356, 392 A.2d 421, 422 (1978)); *Hamilton* v. *Department of Employment Security*, 139 Vt. 326, 328, 428 A.2d 1108, 1109 (1981). In ascertaining the sufficiency of the findings, we will construe the record in a manner most favorable to the Board's conclusions. *Hamilton* v. *Department of Employment Security*, *supra*, 139 Vt. at 328, 428 A.2d at 1109; *Wheeler* v. *Department of Employment Security*, 139 Vt. 69, 71, 421 A.2d 1315, 1316 (1980).

■  We will consider the findings sufficient " 'if they dispose of the issues presented and make a clear statement of the trier's decision and the basis upon which that decision was made.' " *Wheeler* v. *Department of Employment Security*,

*supra*, 139 Vt. at 71, 421 A.2d at 1316 (quoting *Frost* v. *Department of Employment Security*, 135 Vt. 39, 40, 370 A.2d 203, 204 (1977)). The findings of the Board will be affirmed if there is credible evidence to support them, since "[t]he weight to be given the testimony and the inferences to be drawn therefrom are matters properly for the Board, not for this Court." *Frost* v. *Department of Employment Security, supra*, 135 Vt. at 40, 370 A.2d at 204. The burden is on the excepting party to show reversible error. *Wheeler* v. *Department of Employment Security, supra*, 139 Vt. at 71, 421 A.2d at 1316 (citing *Crawford* v. *State Highway Board*, 130 Vt. 18, 25, 285 A.2d 760, 764–65 (1971)).

Specifically, the employer excepts to two of the Board's findings, the first of which relates to the claimant's being required to work split shifts in violation of the union contract. The employer insists that there was confusion in the record as to whether claimant even understood the nature of a split shift, thus leaving the finding without any credible evidence to support it. We disagree. Our reading of the record indicates that claimant was fully aware of what constituted a split shift. At the referee hearing, she testified that on a number of occasions she was required to work a morning shift, from 9:00 a.m. to 1:00 p.m., following by an evening shift, from 5:00 or 6:00 p.m. to 9:00 p.m., thus leaving her with "nothing to do for four or five hours." In short, her testimony amply supports a finding that she was sometimes required to work a split shift.

The employer's next contention is that the seventh finding of the Board is wholly deficient in that it appears to do no more than recite claimant's allegations, without expressing an opinion as to whether it viewed the allegations as true or not. That finding states:

> After the above incident, the claimant alleges that [the store manager] made derogatory remarks about her and her family to other employees. Because the claimant considered the comments so highly objectionable, she refused to repeat them in front of the Referee. She did testify, however, that she herself overheard [the store manager] making a remark about her parents, but does not recall

the nature of the comment. The claimant also alleges that her hours were cut.

Simply put, the employer cites the words "alleges" and "testify" and insists that such language suggests that the Board in fact never made a finding with regard to these matters. Furthermore, even if the findings are found to be sufficient, the employer asserts that there is no credible evidence in the record to support them.

We agree that the use of terms such as "alleges" and "testifies" in a finding of fact is improper. See *Krupp* v. *Krupp*, 126 Vt. 511, 514, 236 A.2d 653, 655 (1967). However, in its conclusions, the Board unequivocally states that the allegations contained in finding #7, of derogatory remarks and a cut in hours, did in fact take place. "[T]he mere fact that a finding is a conclusion of law is harmless when it is sustained by other facts found which are sufficient in law to support the conclusion." *LaFountain* v. *Vermont Employment Security Board*, 133 Vt. 42, 45, 330 A.2d 468, 470 (1974); *Gramatan National Bank & Trust Co.* v. *Pierce*, 121 Vt. 406, 413, 159 A.2d 781, 785 (1960). The record contains testimony by claimant in support of her allegations of derogatory remarks and an altered work schedule which required her to work more days with shorter hours. As stated above, the Board is in the best position to judge the credibility of the evidence before it, *Frost* v. *Department of Employment Security, supra,* 135 Vt. at 40, 370 A.2d at 204, and we find no indication in the record that said discretion was abused.

Finally, we reject the employer's contention that the Board's conclusions are unsupported as a matter of law. In light of the substantial changes in claimant's working conditions immediately following the unsuccessful attempt to fire her, it was not untenable for the Board to conclude that the store manager was deliberately trying to annoy her. Since such conduct provided claimant with the requisite good cause attributable to her employer for voluntarily leaving her job, the decision of the Board is affirmed.

*Affirmed.*