STATE OF VERMONT
SUPERIOR COURT - ENVIRONMENTAL DIVISION

| | | |
|---|---|---|
| | { | |
| In re Edgar Northshore Drive Variance | { | Docket No. 163-11-11 Vtec |
| Application | { | |
| | { | |

## Decision in On-the-Record Appeal

In this on-the-record proceeding, Margaret M. Edgar, Trustee (Appellant) appeals a decision by the Town of Ludlow Development Review Board (the DRB) which upheld a notice of violation (NOV) that the Town of Ludlow's Director of Planning and Zoning had issued to Appellant. Specifically, Appellant contests the DRB's determination that her installation of an interior ceiling failed to remedy the violation that arose when her previous basement renovation increased the overall height of her house, including increasing the height of a corner of the house resulting in a further encroachment or increased nonconformity in the waterfront setback area. The principal questions before this Court are whether the DRB erred in affirming the NOV and whether the DRB made reversible procedural errors.

In issuing this Decision on the merits of this on-the-record appeal from the DRB's decision, the Court has taken into account the parties' briefs and oral argument, the DRB's decision of October 4, 2011 affirming the NOV, our previous decision in In re Edgar Northshore Drive Variance Application, No. 292-12-07 Vtec (Vt. Envtl. Ct. Feb. 5, 2009) (Wright, J.), and the record as a whole. Appellant has not objected to the contents of the record that the DRB submitted.

Appellant is represented by Eric C. Velto, Esq. and L. Raymond Massucco, Esq. The Town of Ludlow (the Town) is represented by J. Christopher Callahan, Esq. and Brendan P. Donahue, Esq.

## Background

Appellant owns a house at 51 Northshore Drive in the Town of Ludlow's lake zoning district, where houses must be set back from the waterfront by at least 50 feet. The house was constructed before the enactment of the setback requirements, and its southeast corner encroaches into the waterfront setback area by approximately 7.8 feet. It is uncontested that the house is a pre-existing nonconforming structure under the Town of Ludlow, Vermont Zoning

and Flood Hazard Regulations, Amended December 2, 2007, (Regulations), which—at § 262.1— define a "nonconforming structure" as "a structure or part of a structure that does not conform to the present bylaws but was in conformance with all applicable laws, ordinances, and regulations prior to the enactment of the present bylaws, including a structure improperly authorized as a result of error by the administrative officer."

In early January of 2007, Appellant transformed the building's lower portion, which previously consisted of a dirt floor and concrete supports, into a finished walk-out basement.[1] To install the poured concrete foundation, she raised the entire building,[2] causing the house's roof to be 12 inches higher than before the renovations. In late January of 2007, the Town issued Appellant an NOV for construction activities without a permit. Appellant did not appeal this NOV; instead, she eventually applied for a variance to the waterfront setback in August of 2007.

The DRB denied the variance in January 2008. On appeal by Appellant, this Court conducted an on-the-record review of the DRB's decision. Edgar Variance Application, No. 292-12-07 Vtec (Vt. Envtl. Ct. Feb. 5, 2009). In Judge Wright's 2009 decision, she determined that the DRB erred in requiring a variance for the transformation of the storage space into living space because the Regulations allow maintenance and repair within the original confines of nonconforming structures. Id. at 7 (citing Regulations § 262.2). Noting, however, that the Regulations also require compliance with all aspects of the Regulations when a property owner expands such structures, including vertically, Judge Wright ultimately affirmed the variance requirement for the vertical expansion "but only in the nonconforming corner portion of the structure." Id. Lastly, Judge Wright found substantial evidence in the record to support the DRB's denial of a variance for the volume of space "above the existing nonconforming southeast corner." Id. The Court's corresponding judgment order describes the relevant space as "the top twelve inches of the renovated structure, extending from the southeasterly corner of the structure to points approximately eleven feet along the southerly and the easterly walls of the structure, and extending within the structure to a point approximately 7.8 feet

---

[1] Article 7 of the Regulations defines "basement" as "[a]ny area of a building which has its floor sub-grade (below ground level) on all sides." Since Appellant's lower level does not have a sub-grade floor on all sides, the term "basement" is technically inapposite. We use that term for the sake of simplicity, however, since parties refer to the lower level as the "basement" throughout their briefs.

[2] Appellant also excavated below the prior support structure, adding volume both above and below ground level, including in the nonconforming corner. For this appeal, however, only the 12-inch above-ground expansion of the nonconforming corner is at issue.

perpendicularly into the structure from the southeast corner." In re Edgar Northshore Dr. Variance Application, No. 292-12-07 Vtec, slip op. at 1 (March 5, 2009).[3]

Appellant did not appeal the Court's February 5, 2009 decision or March 5, 2009 judgment order. On March 28, 2011, the Town's Director of Planning and Zoning, Rose Goings, issued an NOV to Appellant for her continuing violation of the waterfront setback based on her failure to "remove the offending portion of the building . . . as reflected in the Environmental Court action." (Mar. 28, 2011 Violation Notice for 51 Northshore Dr., filed Dec. 19, 2011.) Appellant appealed the NOV to the DRB arguing that Goings had no basis for issuing the NOV because prior to receiving it, Appellant had abated any alleged violation by reducing the offending volume. (Notice of Appeal ¶ 3, filed Apr. 22, 2011.)

The DRB held a hearing on Appellant's appeal on August 8, 2011, continued on September 12, 2011. During the hearing, Appellant's counsel argued that the offending volume to which this Court's order referred "was created on the lower level" and that by lowering the basement ceiling by 12 inches, his client had "physically closed in, capped off, and removed" the space. (Transcript of Town of Ludlow Sept. 12, 2011 DRB Pub. Hearing 15:2–21, filed July 10, 2012 [hereinafter Sept. 12, 2011 DRB Hr'g].) The DRB ultimately affirmed the NOV, concluding that a zoning violation remained, because "the variance for the increase of nonconformity was denied, and the offending portion of the structure (Described above) remains." In re Margaret Edgar, Trustee, Findings of Fact and Decision, at 5 (Town and Village of Ludlow Dev. Review Bd. Oct. 4, 2011) [hereinafter DRB Findings of Fact & Decision]. This decision is the subject of Appellant's timely appeal to this Court.

**Discussion**

Our review of the DRB's decision is limited to addressing the questions raised by the Appellant in her Statement of Questions. See V.R.E.C.P. 5(f). Appellant's five questions

---

[3] In her order, Judge Wright suggested that Appellant file drawings for the clarity of the Town's and the Court's records, but no party submitted a sketch that she found sufficiently detailed to include with the order. See Edgar Variance Application, No. 292-12-07 Vtec, slip op. at 1 (Vt. Envtl. Ct. Mar. 5, 2009); In re Edgar Northshore Drive Variance Application, No. 292-12-07 Vtec, slip op. at 1 (Vt. Envtl. Ct. Mar. 22, 2011). She made clear that the rough sketch she herself had prepared to assist the parties "was not attached to or incorporated in any order in this matter, nor was a more accurate plan, elevation, or orthogonal architectural or engineering drawing provided by the parties nor incorporated in a court order." Id. To the extent that any party relied on that sketch in making decisions or in arguing its case in this appeal, such reliance was unreasonable in light of Judge Wright's clear warning. We will not consider arguments based on parties' interpretation of her drawing.

3

essentially ask whether the DRB erred by (1) determining that the volume of space above the pre-renovation height of the roofline in the nonconforming corner violates waterfront setback requirements; (2) refusing to consider Appellant's lowering of her basement ceiling as having "removed" the volume for which this Court had previously determined that a variance is required; and (3) committing evidentiary and procedural errors.

For the reasons discussed below, we conclude as a matter of law that the DRB did not err in finding an ongoing violation that Appellant had failed to remedy. We also find that the procedural errors alleged do not rise to the level of reversible error.

## I. Standard of review

In an on-the-record appeal to this Court pursuant to V.R.E.C.P. 5(h), our review is limited to the record made before the municipal panel and the briefs submitted by the parties. See In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). We will affirm the municipal panel's factual findings if they are supported by substantial evidence in the record, and we will review its legal conclusions de novo unless such conclusions are within the panel's area of expertise. See In re Stowe Highlands Resort PUD and PRD Application, 2009 VT 76, ¶ 7, 186 Vt. 568 (mem.). In examining whether there is substantial evidence in the record, we are not permitted to make our own assessment of the credibility of witness testimony or reweigh conflicting evidence in the record. See Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248; In re Appeal of Leikert, No. 2004-213, slip op. at 2 (Vt. Nov. 2004) (unpublished mem.). We are simply to inquire whether the record includes relevant evidence that a "reasonable person could accept . . . as adequate" support. Devers-Scott, 2007 VT 4, ¶ 6 (quoting Braun v. Bd. of Dental Exam'rs, 167 Vt. 110, 114 (1997)). As for legal conclusions based on those factual findings, we conduct a de novo review, meaning that we consider whether the DRB's decision reached a correct legal conclusion. See Stowe Highlands, 2009 VT 76, ¶ 7.

## II. The location of the portion of the house requiring a variance

Appellant's Question 5 asks "[d]id the Development Review Board err in its determination of where the additional 'volume' of the renovated structure was created and for which a variance was required?" (Appellant's Statement of Questions, filed Dec. 9, 2011.) Appellant argues that the DRB erred in determining that the volume of space above the pre-renovation height of the roofline in the nonconforming corner violates waterfront setback

4

requirements. (Appellant's Brief 9, filed Mar. 27, 2012.) Pointing to this Court's prior determination that a variance is necessary for "the top twelve inches of the renovated structure," Appellant maintains that "[t]he only renovated space in the home was in the basement level. The top twelve inches of that space must then refer to the top foot of the basement level." Id.

We regard the language in the Court's 2009 decision and judgment order as clear. Before the Court in 2009 was the question of whether two specific aspects of Appellant's original renovations (lettered (b) and (c) within the Court's decision) required a variance. Edgar Variance Application, No. 292-12-07 Vtec, slip op. at 4–5 (Vt. Envtl. Ct. Feb. 5, 2009). Letter (b) was her transformation of a formerly uninhabitable storage area into a walk-out finished basement suitable for year-round habitation. Id. This Court decided that the bulk of the basement renovation did not require a variance because the Regulations allow property owners to repair and maintain nonconforming structures without penalty. Id. at 6–7. Put another way, Appellant was free to make any legal upgrades desired *within the original building envelope.*

Letter (c) of the Court's decision, however, referred to the way that the installation of the basement "lifted the house." Id. at 5. We stated:

> On the other hand, because § 262.2 defines expansion to encompass vertical as well as lateral enlargement of the nonconforming portion of the structure, any enlargement beyond the existing volume of the structure *under the roofed areas* triggers § 262.2. Since adding twelve inches to the foundation increased the height of and thereby created a vertical expansion to the portion of the structure that is within the waterfront setback, a variance was required for the additional twelve inches of *height*, but only in the nonconforming corner portion of the structure.

Id. at 7 (emphasis added). This language makes clear that by adding twelve inches of height to the nonconforming portion of the structure (the portion located within the waterfront setback area), Appellant vertically expanded the building envelope beyond the original nonconforming area, thereby creating the need for a variance for the additional height.

We note that this interpretation is consistent with other language within the Ludlow Zoning Regulations defining upgrading as "[t]he privilege of the property owner to improve the utility of his building, *if* it does not change the *overall use or size* of said building." Regulations Article 7 (emphasis added). Vermont applies the canon of statutory construction called *ejusdem generis*, which dictates that when words "bearing a specific description are followed by words of more general import, the sense of the adjective first used is applied to the

5

words that follow." Kalakowski v. John A. Russell Corp., 137 Vt. 219, 224 (1979). Thus, we read the Regulations as applying the adjective "overall" to both "use" and "size." Although it is true that Appellant renovated her basement and not her roof, those renovations changed the *overall size* of the building itself by increasing its height. As to whether the DRB's findings of fact relating to Appellant's Question 5 are supported by substantial evidence in the record, we are simply to inquire whether the record includes relevant evidence that a "reasonable person could accept . . . as adequate" support. Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248 (quoting Braun v. Bd. of Dental Exam'rs, 167 Vt. 110, 114 (1997)). The DRB's Findings of Fact include, but are not limited to, the following:

6.      The properties [sic] southeast corner is located approximately 42 feet from the lake. The setback requirements for the Lakes district are 50 feet from the lake.

9.      As part of the renovation, the house was raised to accommodate a new foundation. This ultimately resulted in the 12" increase in height on the southeast corner of the structure.

14.     The Environmental Court Decision, dated February 5, 2009, docket number 292-12-07 Vtec, upheld the Ludlow's Development review Boards [sic] decision that a variance was needed for "the additional twelve inches of height, but only in the nonconforming corner portion of the structure."

19.     The exterior dimensions of the structure remain, (as when the notice of violations was sent) at the time of hearing.

DRB Findings of Fact & Decision, at 3–4. There is relevant evidence in the record that a reasonable person could accept as adequate support for these findings. For example, Regulations § 430 establishes that the minimum waterfront setback for permitted structures in the Town Lakes District is 50 feet, and our February 5, 2009 decision, citing a site plan survey conducted on October 12, 2007, states that the southeast corner of the home is 42.2 feet from the lake. Edgar Variance Application, No. 292-12-07 Vtec, slip op. at 5. Appellant's attorney admitted at the hearing that "the entire house was elevated" during the additional renovations and that the nonconforming corner of the house remains raised. (Sept. 12, 2011 DRB Hr'g 14:11, 48:2–23.); see also Edgar Variance Application, No. 292-12-07 Vtec, slip op. at 3 (Vt. Envtl. Ct. Feb. 5, 2009) (explaining how Appellant's renovations raised the southeast corner of the structure by 12 inches). DRB Finding of Fact 14 quotes directly from our February 5, 2009 decision. Edgar Variance Application, No. 292-12-07 Vtec, slip op. at 7. Finally, during the hearing, Appellant's attorney acknowledged that the measures taken by Appellant in an

attempt to correct the setback violation had no effect on the height of the home. (Sept. 12, 2011 DRB Hr'g 40:20–41:7.)

We therefore conclude that the DRB did not err in determining that the offending volume was the space above the pre-renovation height of the roofline in the nonconforming corner of Appellant's house.

**III.    The filling in of interior spaces to reduce volume for purposes of setback nonconformity expansions**

Appellant's Question 4 asks "[d]id the Development Review Board err in its determination of where the additional volume was created and which was subsequently removed by the Appellant?" (Appellant's Statement of Questions, filed Dec. 9, 2011.) Appellant maintains that by installing a basement ceiling one foot lower than the previous basement ceiling, she "permanently removed" that volume from the house, including the portion of the house within the waterfront setback zone. (Appellant's Brief 2, filed Mar. 27, 2012.) She argues that the new ceiling thus obviates the need for a variance for the way her original renovations had expanded the house's volume within the setback zone.

The DRB's Findings of Fact relating to Appellant's Question 4 include the same findings discussed above for Appellant's question 5, plus the following finding:

> 18.    Appellant has lowered ceilings within the structure, thus claiming that the volume of nonconformity has been reduced and now complies with the regulations.

DRB Findings of Fact & Decision, at 4. As discussed above, there is relevant evidence in the record that a reasonable person could accept as adequate support for findings 6, 9, 14, and 19. As for finding 18, there is also adequate evidence in the record in support of this finding. In fact, Appellant provides considerable testimony and several exhibits supporting finding 18. See (Sept. 12, 2011 DRB Hr'g 15:2–21); (Appellant's Photo. Ex. 6–10, filed Dec. 19, 2011.)

Next we consider the DRB's conclusion regarding Appellant's Question 4. As determined above, we conclude that the DRB did not err in its determination of where the additional "volume" of the renovated structure was created. In the context of setback encroachments, just as one uses exterior measurements of a building's walls to determine the two-dimensional area it occupies (building footprint), one uses the exterior measurements of its walls and roof to calculate the three-dimensional space it occupies (volume). The additional encroachment into the waterfront setback is not about interior usable space or volume; rather, it

7

relates to an increase in the height of the structure (or total volume which the outside of the structure encompasses).

Even if interior volume was at issue, the additional volume of Appellant's house has not been removed from the structure. The additional volume is simply divided into another space. Filling a space with framing, insulation, or any other material so as to block human access to the area does not "remove" the space for the purpose of assessing the setback encroachment. We therefore concluded that the DRB did not err in determining that Appellant's lowering of her basement ceiling did not remedy the expansion of her nonconforming setback encroachment.

## III.    Alleged procedural errors

Appellant next contends that the DRB made three errors that substantially prejudiced her. The term "prejudice" in the context of reversible evidentiary errors refers to those affecting the parties' substantive rights or the case's outcome. See Harrington v. Dep't of Emp't Sec., 142 Vt. 340, 344 (1982) (admission of evidence at a hearing conducted by an administrative board was harmless error where it had no impact on Board's decision).[4] Thus, our inquiry here is whether the specifically alleged procedural errors affected the DRB's determination that Appellant had not reduced the height of her house and therefore she violated the waterfront setback requirements.

The first alleged error is the DRB's admission of letters by neighbors expressing general support for the uniform application of zoning requirements. The DRB did not explicitly rely on these letters in reaching its decision, and Appellant has not proven that the neighbors' letters caused substantial prejudice. The DRB upheld the NOV on the basis that the portion of the home extending above the previous roofline had not been removed. None of the letters bear directly on this issue, and Appellant does not claim that she reduced the height of the building before or after receiving the NOV. The letters therefore cannot constitute grounds for reversal. See In re Quechee Lakes Corp., 154 Vt. 543, 557 (1990) (Appellant who failed to point to any

---

[4] Appellant feels "prejudiced" insofar as she expended money to lower her ceiling purportedly in reliance on what she found to be unclear guidance from this Court and from the DRB. (Appellant's Reply Brief 4, filed May 4, 2012). This is a misunderstanding of the term "prejudice," and, in any case, we have already addressed the question of ambiguity regarding the location of the offending volume.

Environmental Board finding based on the challenged evidence failed to demonstrate the requisite prejudice for reversal).[5]

The second alleged error occurred on the first day of the hearing, when the DRB read a memo that Director of Planning and Zoning Goings (absent due to a death in the family) had prepared to outline the sequence of events in the case. (Transcript of Town of Ludlow Aug. 8, 2011 DRB Pub. Hearing 6:11–8:10, 15:2–21, filed July 10, 2012.) Appellant has not proven that the recitation of Goings' letter was an error, much less a prejudicial one. The letter was never admitted and Appellant did eventually cross-examine Goings on its contents, albeit at the continuation of the hearing. [6] Moreover, the DRB upheld the NOV because—as Appellant herself does not deny—the portion of the home extending above the prior roofline remains intact. Appellant cannot show that the oral recitation of the letter at the first hearing was an error at all and, if so, that it changed the outcome of the case.

The third alleged error relates to recusal. At the first day of hearing, Appellant objected to the reading of Goings' letter on hearsay grounds, but also objected to continuing the case pending Goings' availability to personally testify. During the ensuing discussion about whether a fair hearing would require a continuance, Board Member Harrison stated, "I don't think anything here was read that didn't actually happen through all that time period, but that's up to you." Id. at 13:11–13. He also stated, "What [Goings] said is true, ok?" Id. at 13:17–18. Ultimately, the DRB neither admitted the memo into evidence nor used it as a basis for its decision, and Goings testified under oath at the second day of hearing, at which time Appellant's counsel cross-examined her regarding the memo. (Sept. 12, 2011 DRB Hr'g 6:2–10:21, 26:1–36:5.) Also at the second day of hearing, the DRB chair refused to grant Appellant's request that Harrison recuse himself based on his statement that Goings' recitation of the events was "true." Id. at 4:15–5:25. The DRB chair asked Harrison whether he felt he could make "a

---

[5] We note that "prior decisions of the environmental board, water resources board, and waste facilities panel shall be given the same weight and consideration as prior decisions of the environmental division." 10 V.S.A. § 8504(m).

[6] Appellant argues that she lacked the opportunity to cross-examine Goings because the DRB instructed her lawyer to ask his questions of the Board, which would then relay them to Goings. This argument is unavailing. Appellant's lawyer did directly cross-examine Goings prior to the DRB's instruction. Second, our review of the transcript reveals that despite the instruction, in effect Appellant's lawyer cross-examined Goings with little to no intervention from the DRB.

fair and objective decision in this matter," and Harrison responded that he could. (Sept. 12, 2011 DRB Hr'g 5:18–20, 26:1–36:5.)

A "conflict of interest" under the DRB's Rule of Procedure 10.3.3 includes "[a] situation where a board member has publicly displayed a prejudgment of the merits of a particular proceeding before the board." The statements by Board Member Harrison which Appellant challenges were made during the hearing, not in an out-of-hearing public forum. He did so while discussing whether accepting into evidence a letter from a witness who was absent due to a death in the family could spare Appellant the inconvenience of returning for a continued hearing. While as a general matter we question the propriety of a decision-maker expressing confidence in the reliability of unsworn testimony, Harrison's remarks in the context of this case do not appear to be a prejudgment on the merits so much as a consideration of procedural matters, a critical function of decision-making bodies. We agree with the DRB's determination that Harrison's statements when taken in context did not rise to the level of a conflict of interest requiring recusal.

## Conclusion

For the reasons detailed above, we conclude that the DRB did not err in upholding the NOV based on Appellant's failure to remove the offending portion of the building. We also conclude that the procedural issues Appellant raises do not require reversal. The corner of the house that encroaches into the waterfront setback area remains 12 inches taller than it was before the renovation. Until Appellant reduces the building height so that it no longer extends above the pre-renovation roofline, she remains in violation of the Town's waterfront setback provisions.

Done at Berlin, Vermont this 28th day of September, 2012.

Thomas G. Walsh,
Environmental Judge