VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.        25-AP-304



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## <u>ENTRY ORDER</u>

FEBRUARY TERM,   2026

Ellora Carr\* v. Department of Labor
(Tim Tom LLC)

}   APPEALED FROM:
}
}   Employment Security Board
}   CASE NO. 03-25-044-01

In the above-entitled cause, the Clerk will enter:

Claimant appeals the Employment Security Board's decision upholding a determination that she left her employment voluntarily without good cause attributable to employer and was liable for overpaid benefits.  On appeal, claimant contends that the Board erred in determining that she voluntarily quit her employment and that she was denied a fair hearing before the agency.  We affirm.

The record demonstrates the following.  Employer runs a small restaurant that has an upstairs room for special events.  The upstairs room requires its own server to staff events.  Claimant worked for employer as a server in both the regular and upstairs locations from November 2022 to late January 2023.  Claimant was receiving unemployment benefits prior to this employment and filed claims for partial unemployment during her employment.  She was scheduled to work an event in the upstairs room on Saturday, January 28, 2023.  Three days prior to the event, the guests canceled.  Employer immediately notified claimant that she was not needed on that evening.  On January 27, claimant texted employer that she would not continue to make herself available to work for employer.  Employer interpreted this to mean that claimant quit.  When claimant subsequently filed her claim for unemployment benefits, she answered "no" to the questions "were you fired from a job" and "did you quit a job."  Claimant was paid $10,932 in benefits from February 2023 to July 2023.

In June 2024, after claimant's case was reviewed, a claims adjudicator determined that claimant left her employment voluntarily without good cause attributable to her employer and that she misrepresented a material fact when filing her claim by failing to indicate that she was separated from employer.[1]  Claimant appealed.

---

[1]  Claimant asserts that the Department made a prior determination regarding her benefits, and that the Department erred in failing to provide those records as part of this appeal.  Because this appeal solely concerns the Department's decision that began with the June 2024 review, the

An administrative law judge (ALJ) held a hearing on claimant's appeal. Both claimant and employer appeared at the hearing. The ALJ indicated that the parties would both have an opportunity to testify at the hearing. Claimant asserted that she had sent the Department copies of text messages from employer and questioned why they were not part of the record. The ALJ indicated that no text messages were received, but that claimant could testify as to what happened. Claimant testified that she was taken off the schedule after being promised hours and that employer reduced her hours because she had filed for partial unemployment while still employed. Claimant stated that she previously presented text messages to the Department, and the Department originally agreed that she did not voluntarily quit. Claimant asserted that she did not quit, and she was not fired; there simply were not hours for her to work. Employer testified that claimant sent a text on January 27 that employer interpreted to mean claimant was quitting. The entire text was as follows:

> I won't be making myself available to anyone who cuts me off the schedule for the foreseeable future. After I gave you first dibs on my availability and followed through on that and what do I get in return a night of income compromised three days in advance and a layoff. It's completely outright inconsiderate and unfair and you know it. So if that is the way you want to do things, I will not continue to make myself available to work with you.

Employer testified that this text was sent after employer notified claimant that she would not be needed for Saturday due to the canceled special event and that she did not cancel claimant's shift on any other occasion. Employer testified that this was the last communication she received from claimant. Employer also stated that she did not know claimant was receiving unemployment benefits and that she did not fire claimant.

In October 2024, the ALJ found that claimant left her employment voluntarily when she sent the text message, and that her quit was without good cause attributable to the employer because, although she was unhappy with losing her shift, it was the guests who canceled the reservation and not employer's decision. The ALJ further found that claimant failed to notify the Department after she separated from her employment, resulting in her receiving benefits to which she was not entitled.

Claimant appealed to the Board, arguing that the ALJ did not enter into the record, or consider, text messages that she alleged she had submitted to the Department. The Board remanded to the ALJ to allow claimant an opportunity to submit the text messages "dated between November 2022 and February 2023" into the record. On remand, claimant provided numerous documents but only one text message from the relevant period, and it appeared to be from someone other than employer. Although the ALJ provided claimant with an opportunity to submit information regarding the individual's identity, no further filings were made, and therefore the ALJ excluded the text message. The ALJ reaffirmed the prior decision. Claimant

---

Department was not obligated to provide records related to claimant's other unemployment claims.

again appealed to the Board, which concluded that the evidence supported the ALJ's decision.[2] Claimant now appeals to this Court.

An employee is disqualified from unemployment benefits if the employee leaves the employment voluntarily without good cause attributable to the employer. 21 V.S.A. § 1344(a)(2)(A). To have good cause, an employee must show first "a sufficient reason to justify the quit," and second that the reason was "attributable to the employing unit." Allen v. Dep't of Emp. & Training, 159 Vt. 286, 289 (1992) (quotation omitted). The claimant has the burden to prove good cause. Skudlarek v. Dep't of Emp. & Training, 160 Vt. 277, 280 (1993). "On review of the Board's determination, we will not disturb factual findings supported by credible evidence." Id.

On appeal to this Court, claimant first argues that she did not voluntarily quit her employment. She contends that she was repeatedly called off shifts and that this amounted to a constructive discharge, violated an implied contract with employer, and provided her with a reasonable basis to quit.[3] She also asserts that she had to file for partial unemployment while employed to stabilize her finances and that employer subsequently retaliated against her for doing so. Claimant contends that she was treated less favorably than newer employees and lost important shifts.

The text message claimant sent to employer and employer's testimony that claimant did not contact her after sending the message support the Board's finding that claimant voluntarily quit her employment and did not meet her burden of showing that she had good cause attributable to her employer.[4] The determination of whether there was good cause involves applying a standard of reasonableness. Isabelle v. Dep't of Emp. & Training, 150 Vt. 458, 460 (1988). The ALJ found that although employer canceled claimant's shift, claimant was provided three days' notice, and the change was caused by a guest cancelation. The Board did not err in adopting the ALJ's finding and concluding that one canceled shift for reasons unrelated to employer did not provide good cause to quit.

On appeal, claimant asserts that employer misrepresented the facts and testified falsely, and that more than one of her shifts was canceled. She also contends that the evidence shows

---

[2] Given that claimant was provided with this opportunity to provide additional evidence, there is no basis for claimant's assertion that the ALJ ignored and refused to admit "exculpatory evidence."

[3] Claimant's assertions of constructive discharge and violation of an implied contract were not preserved below and are beyond the scope of this proceeding.

[4] On appeal, claimant argues that the text message cannot be relied upon because it was not properly authenticated. She has also filed a motion to strike the text message as "hearsay testimony." Before the ALJ, claimant did not challenge the authenticity of the text message or object on hearsay grounds. She admitted that she texted employer but disputed the full content of the message, stating she texted that she would not make herself available for work if she was cut off the schedule. Because claimant's arguments regarding authenticity and hearsay were not properly preserved below, we do not address them. See Pratt v. Pallito, 2017 VT 22, ¶ 16, 204 Vt. 313 (explaining that to preserve argument for appeal, party must raise it with specificity and clarity before agency). The motions to strike the text message, the testimony regarding the text message, and the findings derived from it are therefore denied.

that employer canceled shifts in retaliation for claimant seeking unemployment benefits. Claimant essentially asks us to reweigh the evidence on appeal, which is beyond our role. See Harrington v. Dep't of Emp. Sec., 142 Vt. 340, 346 (1982) (explaining that Board is "in the best position to judge the credibility of the evidence before it"). We "construe the record in a manner most favorable to the Board's conclusions." Id. at 344.

Claimant also raises several arguments regarding the proceedings below. She argues that her rights to a fair hearing and to due process were violated because she was prevented from submitting evidence and was cut off or disconnected during hearings. She also alleges that she made judicial complaints against individuals and that she received biased treatment. "Due process requires a fair hearing before an unbiased decisionmaker, both in courts and administrative agencies." In re Grismore, 2024 VT 70, ¶ 17. Decisionmakers have "a presumption of honesty and integrity," and claimant has the burden to overcome this presumption. Id. (quotation omitted). The record indicates that claimant had a full opportunity to present her case to the agency. Claimant was afforded a hearing before an ALJ and then the Board. The ALJ provided claimant with a chance to testify and present her side. After the Board's first hearing, it remanded the matter to allow claimant an opportunity to submit evidence that she claimed had not been properly entered into the record. The ALJ provided two opportunities to claimant to submit evidence responsive to the Board's remand. After the ALJ reaffirmed her decision, claimant received a second hearing before the Board. The transcript reflects that claimant presented argument to the Board and was removed after she was repeatedly warned that she would be removed from the hearing if she continued to interrupt during employer's turn to speak. The transcript does not support claimant's assertion of bias or mistreatment. Her motion to remove the Department's attorney is denied.

During the pendency of the appeal, claimant filed numerous motions seeking to supplement the record on appeal. They are denied. Appeals to this Court from the Board are based on the record produced before the Board. 3 V.S.A. § 809(e) (providing that record in contested administrative case includes motions and evidence received and considered); V.R.A.P. 13(b) (defining record on appeal for agency case). Claimant had opportunities to provide her evidence to the agency, and this Court does not accept new evidence on appeal. Her motion to strike portions of the brief and record is also denied as it relies on new evidence.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Nancy J. Waples, Associate Justice

4